# Gregory Carr d/b/a Carr Electric v. Peerless Insurance Company and New England Acceptance Corporation

[724 A.2d 454]

No. 97-404

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed November 20, 1998

*Kevin E. Brown* of *Langrock Sperry & Wool, Middlebury,* for Plaintiff-Appellant.

*Michael J. DiRusso,* Keene, New Hampshire, for Defendant-Appellee Peerless Insurance Co.

*James Runcie* of *Ouimette & Runcie,* Vergennes, and *Robert B. Lucic* of *Sheehan, Phinney, Bass and Green,* Manchester, New Hampshire, for Defendant-Appellee New England Acceptance Corp.

**Dooley, J.** Plaintiff Gregory Carr appeals from a judgment entered in the Addison Superior Court declaring that neither defendant Peerless Insurance Company nor defendant New England Acceptance Corporation (NEAC) are obligated to defend and/or to indemnify him in connection with a suit against him that arose out of a fire at a residence at which he performed work as an electrician. We conclude that the superior court properly rendered summary judgment in favor of Peerless as plaintiff's liability insurer. However, because the record demonstrates that NEAC, an insurance premium financing company, failed to comply with the insurance policy cancellation procedures enumerated in 8 V.S.A. § 7009, we further conclude that plaintiff is entitled to recover against NEAC. We affirm in part and reverse in part.

The case was decided in the trial court on a series of summary judgment motions. In an appeal of a summary judgment, we apply the same standard that was applicable in the trial court and determine whether there are genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. See *City of St. Albans v. Northwest Reg'l Planning Comm'n,* 167 Vt. 466, 469, 708 A.2d 194, 196-97 (1998). In the case of cross-motions for summary judgment, "both parties are entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." *Id.* at 469, 708 A.2d at 197 (citation omitted).

The relevant facts as developed in the summary judgment record are not in dispute. Plaintiff is an electrician who purchased a contractor's liability policy from Peerless covering a one-year period commencing on October 25, 1989. To finance this acquisition of insurance, plaintiff also executed a premium financing agreement with NEAC, pursuant to which NEAC paid the annual premium to

Peerless and plaintiff was obligated to make monthly payments to NEAC. The premium financing agreement included language granting NEAC power of attorney with authority to cancel the insurance policy in question, "to give or to receive such notice of cancellation as is required by law, [and] to do all things necessary to effect cancellation."

There were three incidents of premium nonpayment and policy cancellation. The last is central to this action. Plaintiff failed to pay a premium installment due on July 25, 1990. As a result, on August 16, 1990, NEAC sent him a notice of cancellation, with a copy to Peerless, which read as follows:

> You are hereby notified that the policy described above is canceled for nonpayment of an installment in accordance with the conditions and terms of the Premium Finance Agreement which incorporates a power of attorney. This cancellation is effective on [August 31, 1990] at 12:01 A.M. This cancellation is to be effected in accordance with the terms of [] Vermont Sec. 1. 8 V.S.A., Chapter 143, § 7009 . . . . [which] recognize[s] this as a valid legal NOTICE OF CANCELLATION and provide[s] that the gross unearned premium be returned to the premium insurance company within 60 days after the effective date of cancellation.

Vermont's insurance premium financing law sets out a two-step process for an insurance premium financing company to initiate cancellation of a policy. The first step is a ten-day notice of intent to cancel stating "the intent of the insurance premium finance company to cancel the insurance contract unless the default is cured within such ten day period." 8 V.S.A. § 7009(b). The second step is the actual notice of cancellation which is required to state an effective date no earlier than ten days after the mailing of the notice. *Id.* § 7009(c). The notice NEAC sent met the requirements for the second step, but NEAC failed to send a notice of intent to cancel, the required first step in the cancellation process.

Plaintiff did nothing to cure his arrearage with NEAC, and Peerless cancelled the policy as instructed by NEAC. On the morning of August 31, 1990, less than 12 hours after the cancellation was effective, a fire occurred in a trailer where plaintiff had performed electrical work two days earlier, and the tenant eventually blamed plaintiff for the damage.

Plaintiff paid the past-due premium installment to NEAC on September 4, 1990. NEAC, in turn, requested that Peerless reinstate

the policy, but the insurance company refused to do so. Nearly three years later, in July 1993, the tenant of the trailer where the fire had occurred filed suit against plaintiff in the Chittenden Superior Court, alleging that he had performed his work on the trailer in a negligent manner. Peerless refused to defend or to indemnify plaintiff.

Plaintiff thereupon filed the instant declaratory judgment action, asking the trial court to determine that Peerless was obligated under the insurance policy to defend and indemnify in connection with the tenant's claims. When it emerged that plaintiff claimed that NEAC had failed to give notice of intent to cancel the policy, as required by 8 V.S.A. § 7009(b), Peerless brought a third-party complaint against NEAC alleging that Peerless is entitled to indemnification from NEAC in the event the court found that its cancellation of the plaintiff's policy was ineffective. Plaintiff thereafter asserted a claim directly against NEAC, alleging that NEAC is liable to the plaintiff for failing to comply with the notice provisions of 8 V.S.A. § 7009. See V.R.C.P. 14(a) (when defendant acts as third-party plaintiff to bring in third-party defendant, plaintiff "may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff"). In the third-party complaint, plaintiff sought an order determining that NEAC must provide all the rights and benefits plaintiff would have received under the Peerless policy and pay any other damages caused by the illegal cancellation.

Both Peerless and plaintiff moved for summary judgment and, on May 17, 1996, the trial court found for Peerless, holding that the cancellation of the policy was effective. However, NEAC filed a cross-claim against Peerless, and the court denied a request by Peerless under V.R.C.P. 54(b) to enter final judgment in its favor against the plaintiff. Peerless and plaintiff each moved for summary judgment against NEAC. The trial court ruled on September 2, 1997 that NEAC's failure to comply fully with the notice provisions of 8 V.S.A. § 7009(b) did not proximately cause plaintiff's loss of insurance coverage and, therefore, that NEAC was entitled to summary judgment in its favor on plaintiff's claim against it. The court also ruled that, to the extent its resolution of plaintiff's claim against NEAC did not render the remaining dispute between Peerless and NEAC moot, Peerless was entitled to summary judgment on NEAC's cross-claim. This appeal followed.

Plaintiff argues on appeal that (1) the failure of NEAC to provide a preliminary notice of intent to cancel, as required by § 7009(b),

made the cancellation ineffective so that Peerless remained responsible to defend and indemnify him up to the end of policy; (2) if the policy was properly cancelled by Peerless, NEAC is liable to him for the benefits that would have been provided under the policy because it failed to comply with the cancellation requirements of 8 V.S.A. § 7009; and (3) NEAC's actions were the proximate cause of plaintiff's loss of its insurance policy rights. We begin with plaintiff's claim against Peerless.

The Vermont Legislature has enacted a comprehensive scheme for the regulation, under the aegis of the Vermont Commissioner of Banking, Insurance and Securities, of those engaged in the business of financing the payment of insurance premiums in this state. See 8 V.S.A. §§ 7001-7011 (providing for licensing of premium finance companies, establishing requirements for form of financing contracts, limiting interest and fees thereunder and establishing fines and/or imprisonment for violations, inter alia). The statutes regulate insurance premium finance agreements, which are defined as

> agreement[s] by which an insured or prospective insured promises to pay to an insurance premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance agent or broker in payment of premiums of an insurance contract together with interest and a service charge as authorized and limited by this chapter.

8 V.S.A. § 7001(2). As part of this regulatory scheme, the statute specifically authorizes such agreements to include a provision granting the insurance premium finance company a power of attorney for purpose of cancelling the underlying insurance policies in appropriate circumstances. The agreement between plaintiff and NEAC contains such a power of attorney.

The finance company's exercise of cancellation authority is subject, in relevant part, to the following detailed statutory requirements:

> (a) When an insurance premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such cancellation is effectuated in accordance with this section.

(b) Not less than ten days' written notice shall be mailed to the insured, at his last known address as shown on the records of the insurance premium finance company, of the intent of the insurance premium finance company to cancel the insurance contract unless the default is cured within such ten day period.

(c) After expiration of such ten day period, the insurance premium finance company may thereafter cancel such insurance contract or contracts by mailing to the insurer a notice of cancellation. The insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. Such cancellation shall be effective no less then 10 days after mailing of the notice to the insurer. The insurance premium finance company shall also mail at least 10 days' notice of cancellation to the insured at his last known address as shown on the records of the insurance premium finance company. . . .

*Id.* § 7009. The statutory scheme contains no private remedy for violation of § 7009 beyond that which may be implied in the wording of the section. It does provide for criminal penalties. *Id.* § 7011.

It is undisputed that the notice of cancellation NEAC sent plaintiff and Peerless is the one set forth in § 7009(c) and that NEAC never sent plaintiff a notice of *intent* to cancel as required by § 7009(b).[1] The plaintiff here maintains, as he did without success in the trial court, that NEAC's failure to comply with § 7009(b) entitles him to relief as against both Peerless and NEAC. With respect to Peerless, his position is that § 7009(a) specifically provides that the insurance policy "shall not be canceled" except "in accordance with this section" and that Peerless's cancellation violated this direction.

We agree with Peerless, and with the trial court, that there is no basis for holding an insurance company directly liable to its insured in these circumstances. Nothing suggests that Peerless violated the terms of the contract of insurance it made with plaintiff. Neither plaintiff nor NEAC contend that Peerless violated any statute or

---

[1] Peerless sought in its initial summary judgment motion to generate a genuine issue of material fact as to whether NEAC mailed plaintiff a notice of intent to cancel. When the trial court ruled in favor of Peerless, it simply assumed that the notice of intent to cancel was never sent. On appeal, plaintiff asserts that NEAC never sent the intent notice, a factual position not contested by either Peerless or NEAC.

regulation governing the cancellation of its policy, other than § 7009. Nor can we agree with plaintiff that § 7009 has the effect of rendering the cancellation ineffective, thus making Peerless liable under the policy, because NEAC failed to comply fully with the notice requirements enumerated therein.

We note that the issue before us has been resolved by a number of courts based on identical or similar statutory language. A leading case for plaintiff's position is *Kende Leasing Corp. v. A.I. Credit Corp.*, 524 A.2d 1306 (N.J. Super. Ct. App. Div. 1987), in which both the facts and the statutory language are virtually identical to those in the case before us. The court reasoned that if the insurer could effectively cancel the policy despite the failure of the finance company to send the notice of intent to cancel, the notice requirement would be meaningless. *Id.* at 1311. The court also reasoned that the premium finance company's ability to use the power of attorney was conditional on it acting consistently with the statute. Thus, in the court's view, if the finance company failed to comply with the statute, its request to cancel was ineffective and made the cancellation also ineffective. *Id.* at 1313. Finally, the court concluded that a remedy against the premium finance company would be less effective because the purpose of the law was to allow the insured to prevent a cancellation rather than to give the insured a remedy if a cancellation occurred. *Id.* at 1311-12. For these reasons, the court held that the insurer remained responsible to defend and indemnify the insured as if the cancellation had not occurred.

The opposing view is represented by *Universal Fire & Casualty Insurance Co. v. Jabin*, 16 F.3d 1465 (7th Cir. 1994), another case with a virtually identical fact pattern and statutory scheme to that in this case. The court held that to construe the premium finance act to protect insureds by "giving them recourse against insurers as well, would torture the Act's ordinary meaning." *Id.* at 1468. Thus, the court noted that the language prohibiting cancellation without compliance with the notice requirements specifically applied to the premium finance company, and not the insurer. *Id.* It reasoned that if the insurer's cancellation was ineffective because of the finance company's failure to give notice, the burden of notice was effectively reallocated to the insurer, a reallocation the legislature did not intend. *Id.* at 1469. It specifically disagreed with *Kende*'s conclusions that the lack of a remedy against the insurer made the notice provisions meaningless or that a remedy against the finance company was ineffective to implement the legislative purpose. *Id.* at 1470.

472

■ We are more persuaded by the court's analysis in *Jabin*. "We must construe a statute according to the ordinary meaning of the words the legislature has chosen." *In re Villeneuve*, 167 Vt. 450, 458, 709 A.2d 1067, 1072 (1998). Nothing in the statutory scheme suggests that the insurer is responsible for the improper actions of the finance company. The insurance premium finance agreement is between the insured and the finance company, and the insurer is not a party to it. There is no supervisory or monitoring relationship between the insurer and the finance company. When the Legislature has deemed it appropriate to regulate or limit an insurance company's ability to cancel a policy it has issued, the Legislature has enacted statutes that plainly say so. See, e.g., 8 V.S.A. §§ 3879-3880 (cancellation of fire and casualty insurance); *id.* §§ 4223-4224 (same, automobile insurance); *id.* §§ 4711-4712 (same, commercial risk insurance). There is no such limitation in § 7009 — a statute which, after all, covers not a situation in which an insurance company is acting unilaterally to cancel a policy but is simply following cancellation instructions it has received from an agent of the insured. See *Avery v. Bender*, 119 Vt. 313, 332, 126 A.2d 99, 111-12 (1956) (power of attorney confers agency powers upon grantee "to do any act which the grantor might himself lawfully perform"); *New England Educational Training Service, Inc. v. Silver Street Partnership*, 148 Vt. 99, 105, 528 A.2d 1117, 1120 (1987) (under doctrine of apparent authority, agent binds principal when third-party reasonably relies on representations by agent that agent acting within scope of authority).

As the *Jabin* court emphasized, the statutory language restricting cancellation without compliance with the statute specifically restricts cancellation "by the insurance premium finance company."[2] 8 V.S.A. § 7009(a). Thus, we find that *Jabin* comports with the proper construction of the statute.

We also do not find controlling the policy considerations relied upon in *Kende*. We do not believe the notice requirements are ineffective as long as there is an adequate remedy against the finance company. Nor

---

[2] The language of our statute serves to distinguish some of the cases that find the insurer's cancellation ineffective. For example, the Florida statute construed in *Insurance Co. of North America v. Cooke*, 624 So. 2d 252 (Fla. 1993), provides that when the premium financing company has acquired a power of attorney for cancellation purposes, "'the insurance contract shall not be canceled unless cancellation is in accordance with [notice provisions substantially similar to Vermont's].'" *Id.* at 254 n.2 (quoting § 627.848,.Florida Statutes (1987)). In contrast, the language of the Vermont statute specifically prohibits cancellation *"by the insurance premium finance company."* 8 V.S.A. § 7009(a) (emphasis added).

can we conclude that a remedy against the finance company will be less effective than a remedy against the insurer in discouraging improper cancellations in the future.

It follows logically that any wrong here was committed by the premium finance company, and it is therefore the party to whom the insured should turn for recovery. See *Illinois Ins. Guar. Fund v. Evanston Paper & Paper Shredding Co.*, 649 N.E.2d 568, 569 (Ill. App. Ct. 1995). We believe that plaintiff can recover against the premium finance company on either of two theories.

First, we conclude that we should infer the existence of a private right of action in favor of the insured and against the premium finance company. In determining whether to infer a private right of action based on a statutory claim, most states have used the factors similar to those set out by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975): (1) whether plaintiff is one of a class for whose "especial benefit" the statute was enacted; (2) whether there is any indication of legislative intent, express or implied, to allow or deny a remedy; and (3) whether it is consistent with the legislative scheme to imply a remedy for the plaintiff.[3] *Id.* at 78; see *Corgan v. Muehling*, 574 N.E.2d 602, 609 (Ill. 1991); *Marquay v. Eno*, 662 A.2d 272, 277-78 (N.H. 1995); *Carrier v. Salvation Army*, 667 N.E.2d 328, 329 (N.Y. 1996); *Walker v. Chouteau Lime Co.*, 849 P.2d 1085, 1086-87 (Okla. 1993); *Reed v. Phillips*, 452 S.E.2d 708, 709 (W. Va. 1994). We have not specifically adopted the *Cort* factors, but our decisions are not inconsistent with them. See *Rowe v. Brown*, 157 Vt. 373, 378, 599 A.2d 333, 336 (1991) (no private right of action for damages for violation of open meeting law because there is no indication of legislative intent, express or implied, to create private remedy, citing *Cort*); *Cronin v. State*, 148 Vt. 252, 255, 531 A.2d 929, 931 (1987) (no private right of action for violation of a personnel regulation because regulation was not promulgated for special benefit of plaintiff, citing *Cort*). Most recently, in *Murray v. St. Michael's College*, 164 Vt. 205, 208-09, 667 A.2d 294, 298 (1995), we inferred a private right of action for damages where an employee alleged that an employer had violated 21 V.S.A. § 710(b) by discriminating against the employee in retaliation for filing a workers' compensation claim. We held that such a cause of action was necessary to ensure that the workers' compen-

---

[3] The Court added a fourth factor, not relevant here: whether the cause of action is one traditionally relegated to state law, in an area of concern of the states, so it would be inappropriate to infer the existence of a federal cause of action. *Id.*

sation system worked as the Legislature intended; otherwise the public policy objectives of the workers' compensation system would be defeated because of fear of reprisal. *Id.* at 209-10, 667 A.2d at 298. We adopt the *Cort* factors to determine whether to infer a private right of action based on a statutory violation.[4]

In this case, at least two of the *Cort* factors strongly support adoption of a private right of action. The notice requirements of 8 V.S.A. § 7009(b) were specifically adopted to provide protections to persons in plaintiff's position. The ten day notice period was created to give the insured the opportunity to make the overdue payment and avoid cancellation. Second, creation of a private remedy is necessary to enforce the prohibition on the cancellation of the insurance by the premium finance company without giving proper notice. The only potential statutory consequence of failing to give proper notice is a criminal prosecution if the violation is willful and knowing. See 8 V.S.A. § 7011. The statute also provides that premium finance agreements made in violation of the statute shall be void, but that provision offers no protection if a valid agreement is improperly administered to the detriment of the insured. Finally, we believe that the legislative intent to allow a private remedy against the premium finance company is at least implied in the specific prohibition on cancellation without following the notice provisions of the statute. See 8 V.S.A. § 7009(a).

The Illinois courts have found a private right of action against the premium finance company for violation of the notice requirements of their statute, which in all relevant aspects is identical to the Vermont statute. See *Haft v. Charter Oak Fire Ins. Co.*, 635 N.E.2d 843, 846 (Ill. App. Ct. 1994). We agree with their analysis and reach the same conclusion.

We can also find the insurance premium finance company liable on a theory of breach of its contractual obligation to plaintiff. In its agreement with plaintiff, and pursuant to 8 V.S.A. § 7009(a), NEAC took a power of attorney that gave it the power to cancel plaintiff's policy with Peerless. By its terms, the power of attorney empowered it to give notice as required by law and "to do all things necessary to effect cancellation."

---

[4] The analysis of whether to recognize a private right of action for violations of the Vermont Constitution will continue to be governed by *Shields v. Gerhart*, 163 Vt. 219, 231-35, 658 A.2d 924, 932-34 (1995).

The power of attorney created an agency relationship that placed NEAC in a fiduciary relationship with plaintiff. See Restatement (Second) of Agency §§ 13, 34 cmt. h (1958). The agent had the duty to abide by the terms of the contract with the principal, *id.* § 377; to act "in the principal's affairs . . . in accordance with the principal's manifestation of consent," *id.* § 383; and to act for the benefit of the principal except as otherwise agreed, *id.* § 387 (duty of "loyalty"). When the agent violates a legal duty, the principal has an action for violation of the agency contract and "for losses." *Id.* § 399(a), (b); see also *Fuller v. Ellis*, 39 Vt. 345, 349 (1867) (principal may sue agent for breach of duty).

■ We agree with plaintiff that there was a clear violation of the agent's duties in this case. NEAC used its power of cancellation without complying with legal requirements of notice imposed to protect the interests of the principal. Thus, it acted outside the limits of the power of attorney and failed to discharge its fiduciary duty of loyalty to plaintiff. It is liable for plaintiff's consequential damages.

In reaching the conclusion that NEAC can be liable for damages caused by its failure to comply with its statutory notice obligation, we are agreeing with the conclusion reached by the trial court. That court went on, however, to hold that as a matter of law plaintiff had no provable damages, and this is the main issue that has divided the parties on appeal.

In rendering summary judgment for defendant on damages, the trial court particularly relied upon the fact that plaintiff had twice before failed to pay installments when due. On each of these occasions, plaintiff failed to pay after receiving notice of cancellation, and the insurance was canceled. On each occasion, plaintiff tendered the overdue amount and sought reinstatement, and Peerless reinstated the policy on request of NEAC. The cancellation at the center of this action followed the same pattern, but Peerless refused to reinstate the insurance on this third occasion. The record does not reflect whether Peerless was aware of the claim against plaintiff when it decided not to reinstate the policy.

The trial court reasoned that the record showed that plaintiff would not have paid the premium even if he had received the notice required by § 7009(b), and the insurance would have been canceled. Further, the trial court found that Peerless would not reinstate the policy, whether or not notice had been given. Thus, it concluded that the lack of notice was irrelevant to the policy cancellation, and plaintiff suffered no damages from NEAC's noncompliance with § 7009(b).

Plaintiff argues that the court adopted a standard of causation that was too narrow, and, in any event, went beyond its limited role in deciding a motion for summary judgment and found disputed facts. We agree on both points.

■ Summary judgment is inappropriate if there is a disputed issue of material fact. See V.R.C.P. 56(c). In determining whether there is a disputed issue of material fact, the party opposing summary judgment is entitled to the benefit of all reasonable doubts and inferences. See *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987).

Even based on the theory that NEAC must prevail unless plaintiff can prove that he would have avoided cancellation, or obtained reinstatement, we believe that plaintiff showed enough to avoid summary judgment. The record does not show that NEAC provided notice of intent to cancel, as required by 8 V.S.A. § 7009(b), for either of the prior cancellations. Thus, the trial court's conclusion that the notice of intent to cancel would have had no effect goes too far on this record. However, even if proper notice had been given on the earlier occasions, we do not believe that the payment history conclusively establishes that the notice would have been ineffective on this occasion. Certainly, the trial court could give great weight to the payment history evidence in a trial on the merits, but we do not believe it shows the lack of a disputed issue of material fact.

In any event, there is another view of the evidence by which plaintiff could prevail, even adopting the trial court's theory of causation. This case deals only with a single claim against plaintiff, based on a fire that occurred only eleven and one-half hours after the effective date and time of cancellation. If the cancellation had occurred only one day later, the claim would have been covered. If NEAC had started the process of cancellation on the day that it did, and fully complied with § 7009(b), the cancellation would have been delayed for a week, well beyond the time necessary to cover the claim. Nothing in the record tells us when NEAC would have started the notification process of cancellation if it followed the statute. Irrespective of how we might predict plaintiff's behavior in response to the notices he would have received, we cannot say that the additional notice time required by the statute would have expired when the fire occurred.

Because of the speculation involved in determining causation through hindsight, we are convinced that a narrow view of causation is inadequate in fashioning an appropriate remedy. In finding a

private right of action against the premium finance company, we presume the availability of all appropriate remedies unless the statute expressly limits the remedies available. See *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 66 (1992).

The trial court assumed that the remedy would be an award of damages under the standards applicable to a breach of contract. Although that remedy would often be adequate, the statutory action allows us to consider equitable remedies that are a blend of what is necessary, what is fair and what is workable. See *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 378, 566 A.2d 1323, 1332 (1989) (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)). We agree with those courts that have held the insurer responsible in concluding that the appropriate remedy is to declare the cancellation ineffective and to leave the parties as if the cancellation had not occurred. See *Kende*, 524 A.2d at 1312 (purpose of statute is "to help an insured keep his policy from lapsing, not to give him recourse against a finance company once the hardships of not having coverage have already befallen him"). We impose that remedy on the premium finance company, rather than the insurer, so that company must provide to the insured all the benefits of the policy as if the cancellation did not occur.

This remedy is necessary to implement the statutory prohibition on the premium finance company using the power of attorney to cancel the policy, except pursuant to the § 7009 procedures. It places the plaintiff in the same position as if the illegal cancellation had not occurred. It avoids the expensive, difficult and ultimately speculative process of trying to determine what would have happened if the premium finance company had complied with the law. It provides a strong incentive for the company to comply with the statute and avoid what could be extensive liability exposure. Like the rule we have applied in an analogous situation — failure to comply with notice provisions governing failure of a secured party to notify a debtor of the sale of repossessed collateral under Article 9 of the Uniform Commercial Code — such a remedy for misuse of a § 7009 power of attorney is "simple, certain, and easily administered." *Chittenden Trust Co. v. Andre Noel Sports*, 159 Vt. 387, 395, 621 A.2d 215, 220 (1992).

Under this remedy, plaintiff must prevail against NEAC and should have been awarded summary judgment. Plaintiff's policy had not been effectively canceled when the fire occurred which gave rise

to the claim against plaintiff. NEAC is obligated to provide plaintiff the benefits under the policy.

*The award of summary judgment to Peerless Insurance Company is affirmed. The award of summary judgment to New England Acceptance Corporation is reversed. The matter is remanded for the award of summary judgment to plaintiff, Gregory Carr, against New England Acceptance Corporation and for such further proceedings as are consistent with this opinion.*