RYDER, Acting Chief Judge.
Bobby Cooke, d/b/a Continental Top Shop (Cooke), brought an action against Insurance Company of North America (INA) and INAC Corporation (INAC) due to INAC’s request for cancellation and INA’s actual cancellation of Cooke’s garage and premises insurance policies. INA is the insurer and INAC is the premium finance company. The primary issue in this case is whether INAC’s notice of intent to cancel Cooke’s insurance policies complied with the premium finance cancellation statute, section 627.848, Florida Statutes (1987), and if not, whether such noncompliance precluded INA from validly cancelling the policies. We affirm in part and reverse in part.
On July 12, 1988, Cooke entered into a premium finance agreement with INAC to finance the premises and garage policies, the effective date of coverage being July 14, 1988. The policies were purchased through an insurance agent, Charles M. Harvey, Jr., who at the time was with the Tampa agency of Harvey, Percy & Jones. Mr. Harvey financed the INA policies through INAC. It is undisputed that Cooke executed a valid power of attorney to INAC in all matters pertaining to the financing or cancellation of the policies.
According to an affidavit filed by INAC in support of its motion for summary judgment, Cooke failed to make a payment on the policy due on August 14, 1988. INAC generated a notice of intent to cancel the insurance policies on August 23, 1988, which notice was allegedly forwarded to Cooke as well as Harvey, Percy & Jones. Thereafter, a request for cancellation was sent by INAC on September 7, 1988.[1] However, payment was tendered by Cooke on September 14, 1988, and the policies were reinstated at the request of INAC.
Essentially the same scenario was repeated in October of 1988. Again, according to the affidavit of INAC, a notice of *522 intent to cancel the policies, giving ten days to make payment, was mailed to Cooke on October 19, 1988. Other than the affidavit testimony of Robert Ballon, INAC’s vice president of operations, no documentation of either the contents of the notice or proof of its mailing exists. INAC did, however, introduce into evidence a computer printout entitled “Notices of Intent to Cancel.” INAC claims that this printout “confirms” that the notice of intent to cancel was mailed on October 19, 1988. INAC could not produce a copy of the notice of intent. In an odd commercial practice, INAC does not maintain any return receipts or a U.S. postal service certificate of mailing to prove mailing of this notice.
On November 4, 1988, INAC mailed a request for cancellation of Cooke’s policies stating an effective cancellation date of November 8, 1988. On November 8, 1988, INA sent cancellation notices cancelling the policy on the premises and the garage policy effective November 21 and 23, 1988, respectively. Cooke tendered payment on November 16, 1988. The request for reinstatement was submitted to INA which denied reinstatement because the policies had already been cancelled. Cooke sustained a fire loss on the premises on November 26, 1988.
INAC retained a copy of its November 4, 1988 request for cancellation. INAC’s copy at the bottom states “File Copy.” INA also maintained copies of its notices of cancellation in addition to maintaining a certificate of mailing showing proof of mailing. It was undisputed that notices of intent to cancel were to be mailed to the insurance agent. However, no copy of either the August or October notices of intent to cancel exists in the Harvey, Percy records. The Harvey, Percy records do contain a telephone log entry dated November 2, 1988, referencing a conversation with Cooke regarding a notice of intent to cancel. The Harvey, Percy records also contain copies of all of the requests for and notices of cancellation from both INAC and INA from the September and November cancellations. Cooke denies receiving any notice of intent to cancel in October or November 1988.
INA and INAC moved for summary judgment on the ground that there was an effective cancellation under section 627.-848. Cooke moved for partial summary judgment against INA asserting coverage for the fire loss in part on the basis that the cancellation was not in compliance with section 627.848 and, therefore, was ineffective to cancel the insurance contracts. Cooke also moved to strike the computer printout on the grounds that this document violated the best evidence rule and was not competent or substantial evidence of either the substance or mailing of the notice of intent to cancel the policies.
The trial court granted INA’s motion for summary judgment. The trial court found that INA could rely on the request for cancellation and properly cancel the policy regardless of whether INAC complied with the statute. The trial court denied INAC’s motion for summary judgment holding that it is disputed whether INAC mailed a valid notice of intent to cancel. The trial court also denied Cooke’s motion to strike and partial summary judgment on the coverage issue. This timely appeal followed.
Section 627.848, Florida Statutes (1987), provides that “[w]hen a premium finance agreement contains a power of attorney ... the insurance contract shall not be cancelled unless cancellation is in accordance with the following provisions: (1) Not less than 10 days’ written notice shall be mailed to each insured.”
“In statutory construction, statutes must be given their plain and obvious meaning.” Reed By and Through Lawrence v. Bowen, 503 So.2d 1265, 1267 (Fla.2d DCA 1986), approved, 512 So.2d 198 (Fla.1987). INA contends that section 627.848(4) gives it the authority to cancel an insurance contract upon receipt of the request for cancellation without regard to whether the finance company has complied with the notice provisions contained in subsection (1). Section 627.848(4) provides that
[u]pon receipt of a copy of the cancellation notice by the insurer or insurers, the insurance contract shall be cancelled with the same force and effect as if the *523 notice of cancellation had been submitted by the insured himself, without requiring any further notice to the insured or the return of the insurance contract.
“In matters requiring statutory construction, courts always seek to effectuate legislative intent. Where the words selected by the Legislature are clear and unambiguous, however, judicial interpretation is not appropriate to displace the expressed intent.” Shelby Mutual Insurance Co. of Shelby, Ohio v. Smith, 556 So.2d 393, 395 (Fla.1990) (citations omitted). The introductory language and the language in subsection (1) of section 627.848 is clear and unambiguous in requiring that, when there exists a power of attorney in the finance agreement, the notice provisions must be complied with prior to cancellation. When notice has properly been accomplished by the finance company, the insurance contract “shall be cancelled” by the insurer, pursuant to subsection (4). Shelby Mutual, 556 So.2d at 395-96.
“The primary guide to statutory interpretation is to determine the purpose of the legislature. Uncertainty should be resolved by an interpretation that best accords with the public benefits.” Palma v. State Farm Fire & Casualty, 489 So.2d 147 (Fla. 4th DCA), review denied, 496 So.2d 143 (Fla.1986) (citations omitted). Subsection (4) cannot be read to relieve the insurer of the responsibility to establish that the statute has been complied with, as that responsibility is set forth in the introduction of section 627.848.
INA relies on the cases of Bankers Insurance Co. v. Pannunzio, 538 So.2d 61 (Fla. 4th DCA 1989) and Tate v. Hamilton Insurance Co., 466 So.2d 1205 (Fla.3d DCA 1985) in support of its position that it may cancel an insurance contract regardless of whether the finance company has complied with section 627.848(1). Tate does not support INA’s position in this regard.
In Tate, a judgment was entered against only the insurer and not the finance company. Because the finance company was not made a party before the third district, the Tate court did not review the lower court’s judgment in favor of the finance company. The instant case is before us in a different posture, that being a summary judgment entered in favor of the insurer.
The third district in Tate stated that “[t]he onus is ... properly placed on the finance company to notify the insured that it has cancelled the policy on his behalf.” Tate, 466 So.2d at 1206. This statement is consistent with section 627.848(1), which requires the finance company to send a notice of intent to cancel to the insured. The third district did not indicate that the insurer was free to cancel an insurance contract without first confirming that compliance with section 627.848(1) has been accomplished by the finance company.
In Pannunzio, the insurer introduced into evidence the official certificate of mailing showing that notice of intent to cancel was mailed to the insured, which prevailed as a matter of law over the insured’s self-serving denial of receipt of this notice. The insured in Pannunzio claimed that he also did not receive a copy of the request for cancellation mailed by the finance company to the insurer pursuant to section 627.848(2). The court in Pannunzio held that this request is “simply confirmation to the insurer from the finance company that the insured has not reinstated the loan by payment,” and that “the insured neither acquires nor loses any rights by virtue of the request.” Pannunzio, 538 So.2d at 62. Accordingly, the facts in Pannunzio are distinguishable from the facts here. In this case, there is no proof whatsoever of mailing the notice of intent to cancel.
In Pannunzio, the fourth district stated that “the finance company, not the insurer, bears the onus for failing to give the insured notice and the insured may not recover from the insurer for failure of the finance company to comply with the statute.” Pannunzio, 538 So.2d at 62 (citing Tate). It is this statement upon which INA relies concerning the issues before us. Contrary to the plain meaning of the language in section 627.848, the fourth district, in Pannunzio, expressly relieves the insurer from any responsibility to ascertain compliance with section 627.848(1).
*524 Section 627.848 specifically states that “when a premium finance agreement contains a power of attorney ... the insurance contract shall not be cancelled unless cancellation is in accordance with the following provisions.” We hold that compliance with section 627.848 requires that the insurer have knowledge that each step required has been taken by the finance company before the insurer may cancel the insurance contract. We express direct conflict with the fourth district’s opinion in Pannunzio to the extent that decision conflicts with our holding.
INA next contends that because Cooke’s insurance agent spoke with Cooke on the telephone regarding the notice of intent to cancel, that Cooke had actual notice, which is sufficient under the statute. The record shows that Cooke spoke with his agent on November 2, 1988 regarding the agent’s receipt of a notice of intent to cancel Cooke’s policies. INAC mailed its request for cancellation on November 4, 1988. Even if we were to hold that actual notice by telephone was sufficient under section 627.848(1), the notice here was insufficient, because the notice did not give Cooke ten days to make payment. See § 627.848(1), Fla.Stat. (1987).
The computer printout introduced by INAC as evidence that INAC mailed a notice of intent to Cooke is not competent evidence. The printout, captioned “Notices of Intent to Cancel,” indicates that either the printout itself or the list thereon was “printed Oct. 19, 1988.” The printout simply lists names and addresses and information concerning due dates, amounts owed, cancellation dates and the like. Cooke’s name appears on the list. Although the printout indicates that a notice may have been printed on October 19, 1988, the printout in no way indicates that any notice was mailed to Cooke, or if anything was mailed, the contents of the mailing. The trial court’s denial of Cooke’s motion to strike the computer printout was error. The printout cannot be used as evidence to prove that INA mailed the notice of intent to cancel to Cooke on a specific date. See Sun Bank of St. Lucie County v. Oliver, 403 So.2d 583, 584 (Fla.4th DCA 1981) (“[ejvidence which itself indicates the existence of a more original source of information is to be excluded”).
We have held that INA must have knowledge of INAC’s compliance with section 627.848(1) before INA may cancel an insurance contract. Accordingly, the trial court’s denial of Cooke’s motion for partial summary judgment concerning coverage was proper, as there are genuine issues of material fact concerning this issue as well, i.e., whether there was compliance with section 627.848(1).
We hold that summary final judgment in favor of INA, the insurer in this case, was improper, as there exist genuine issues of material fact with regard to whether there was compliance with the requirements set forth in section 627.848. We affirm the trial court’s denial of Cooke’s motion for partial summary judgment on the same issue, but reverse the trial court’s denial of Cooke’s motion to strike the computer printout. The case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Because our holding directly conflicts with the fourth district’s opinion in Pannunzio, we certify to the Florida Supreme Court the following question:
WHETHER SECTION 627.848 ALLOWS AN INSURER TO CANCEL AN INSURANCE CONTRACT UPON RECEIPT OF A REQUEST OF CANCELLATION SENT BY THE FINANCE COMPANY WITHOUT CONFIRMING THAT THE NOTICE REQUIREMENTS UNDER SUBSECTION (1) HAVE BEEN MET BY THE FINANCE COMPANY WHEN THERE EXISTS A POWER OF ATTORNEY IN THE FINANCE AGREEMENT?
Affirmed in part, reversed in part and remanded.
DANAHY, J., concurs.
LEHAN, J., concurs in part, dissents in part.

. In the briefs filed by appellate counsel and in the record on appeal, the parties refer to the request for cancellation as a "notice of cancellation.”