624 So.2d 252 (1993)
INSURANCE COMPANY OF NORTH AMERICA, Petitioner,
v.
Bobby COOKE, etc., Respondent.
No. 80175.
Supreme Court of Florida.
September 16, 1993.
*253 J.A. Setchel of the Law Offices of J.A. Setchel, Tampa, for petitioner.
Bruce A. Walkley of Walkley & Walkley, Tampa, for respondent.
Steven L. Brannock, Frederick S. Schrils and Stacy D. Blank of Holland & Knight, Tampa, amicus curiae for INAC Corp.
KOGAN, Justice.
We have for review Cooke v. Insurance Co. of North America, 603 So.2d 520 (Fla. 2d DCA 1992), wherein the district court recognized conflict with Bankers Insurance Co. v. Pannunzio, 538 So.2d 61 (Fla. 4th DCA 1989), and certified the following question for our consideration:
WHETHER SECTION 627.848 ALLOWS AN INSURER TO CANCEL AN INSURANCE CONTRACT UPON RECEIPT OF A REQUEST OF CANCELLATION SENT BY THE FINANCE COMPANY WITHOUT CONFIRMING THAT THE NOTICE REQUIREMENTS UNDER SUBSECTION (1) HAVE BEEN MET BY THE FINANCE COMPANY WHEN THERE EXISTS A POWER OF ATTORNEY IN THE FINANCE AGREEMENT?
603 So.2d at 524.[1]
On July 12, 1988, Bobby Cooke, d/b/a Continental Top Shop, entered into the premium finance agreement with INAC Corporation (INAC) to finance Cooke's business premises and garage insurance policies with Insurance Company of North America (INA). Cooke executed a valid power of attorney to INAC in all matters pertaining to the financing or cancellation of the policies. After Cooke failed to make the August 1988 payment, INAC allegedly sent him a notice of intent to cancel giving Cooke ten days to make payment. Thereafter, INAC sent INA a request for cancellation. However, the policies were reinstated at INAC's request after Cooke tendered late payment.
The same scenario of nonpayment and cancellation apparently was repeated in October 1988. According to the affidavit testimony of INAC's vice president of operations, a ten-day notice was again mailed to Cooke on October 19, 1988. INAC also introduced into evidence a computer printout entitled "Notices of Intent to Cancel." No other documentation of either the content or the mailing of the notice was offered. Cooke filed an affidavit denying that he had received the notice of intent to cancel. On November 4, 1988, INAC mailed INA a request for cancellation. On November 8, 1988, INA sent cancellation notices to Cooke. Thereafter, Cooke tendered the October payment and on November 17, 1988, INAC again requested reinstatement. Cooke sustained a fire loss to his business property on November 26, 1988. Two days later INA declined the request for reinstatement. INA denied coverage for the November 26 loss and Cooke instituted the instant action against INA and INAC. Both INA and INAC moved for summary judgment.
INA maintained that the policies had been cancelled prior to the November 26, 1988, loss at the request of INAC in accordance with section 627.848, Florida Statutes (1987). Cooke moved for partial summary judgment against INA maintaining that the cancellation was not in compliance with the statute and therefore was ineffective. Cooke also moved to strike the computer printout offered by INAC. Cooke's and INAC's motions for summary judgment were denied because there were disputed facts in issue as to whether INAC gave Cooke notice in accordance with the statute. Cooke's motion to strike the computer printout also was denied. However, the trial court granted INA's motion *254 for summary judgment, reasoning that an insurer can rely on a request for cancellation from a premium finance company regardless of whether the finance company complied with the provisions of section 627.848.
Cooke appealed the summary final judgment entered in favor of INA. INAC did not participate in the appeal. The district court reversed the ruling in INA's favor, holding that section 627.848(1) is
clear and unambiguous in requiring that, when there exists a power of attorney in the finance agreement, the notice provisions must be complied with prior to cancellation. When notice has properly been accomplished by the finance company, the insurance contract "shall be cancelled" by the insurer, pursuant to subsection (4).
603 So.2d at 523. Thus, the court reasoned that INA had to have knowledge of INAC's compliance with the notice requirements of section 627.848 before it could cancel Cooke's policies. Although the district court reversed the summary judgment in favor of INA, it affirmed the denial of Cooke's motion for partial summary judgment against INA because there were issues of material fact as to whether INAC gave Cooke the requisite notice. However, the district court reversed the denial of Cooke's motion to strike the computer printout. Id. at 524.
The district court certified the above question in light of the conflict with Pannunzio, in which the Fourth District Court of Appeal stated "the finance company, not the insurer, bears the onus for failing to give the insured notice [under section 627.848(2)] and the insured may not recover from the insurer for failure of the finance company to comply with the statute." 538 So.2d at 62. In order to resolve the apparent conflict, we rephrase the question as follows and answer it in the affirmative:
MUST AN INSURER WHO RAISES THE DEFENSE OF CANCELLATION AT THE REQUEST OF A PREMIUM FINANCE COMPANY PURSUANT TO SECTION 627.848 PROVE COMPLIANCE BY THE FINANCE COMPANY WITH THE NOTICE REQUIREMENTS OF SUBSECTION (1) OF THE STATUTE IN ORDER TO AVOID LIABILITY UNDER A CONTRACT OF INSURANCE, WHEN THE INSURED DENIES HAVING RECEIVED SUCH NOTICE?
Under the plain language of section 627.848,[2] when a premium finance agreement contains a power of attorney enabling the finance company to cancel an insurance contract, the insurance contract "shall not be canceled" unless cancellation is effectuated in accordance with the provisions of the statute.
Subsection (1) of the statute mandates that written notice be mailed to the insured of the premium finance company's intent to cancel the insurance contract unless payment is received within ten days. "After the expiration of such period," in order to effectuate the cancellation of the insurance contract the premium finance company must mail the insurer a request for cancellation pursuant to subsection (2). Upon receipt of the request by the insurer, the insurance contract shall be cancelled in the same manner as if the *255 notice of cancellation had been submitted by the insurer himself.
Compliance with the notice requirements of subsection (1) is a condition precedent to the mailing of the request for cancellation to the insurer by the finance company. If the requisite notice is not given, the premium finance company has no authority to seek cancellation of the policy. Thus, even if cancellation under the statute were by the finance company rather than by the insurer, as claimed by INA, the request for cancellation is a nullity unless notice has been given in accordance with subsection (1).
We agree with the district court that subsection (4) cannot be read to relieve an insurer of the burden of establishing compliance with the statute. It is the insurer who is alleging cancellation as a defense; thus, it is the insurer's burden to prove an effective cancellation under the statute. See Hall v. T.C. Saffold Paving Service, 397 So.2d 725 (Fla. 1st DCA 1981) (insurer raising defense of cancellation pursuant to section 627.848 has burden of proving finance company complied with requirements of statute).
Construing virtually identical statutes, the New York and North Carolina Courts have reached a similar conclusion. Felician v. State Farm Mut. Ins. Co., 113 Misc.2d 825, 449 N.Y.S.2d 887 (1982) (it is incumbent upon insurer alleging cancellation to prove that premium finance company complied with ten-day notice requirement of statute since the giving of notice is condition precedent to cancellation of insurance policy); Grant v. State Farm Mut. Auto. Ins. Co., 159 S.E.2d 368 (N.C. Ct. App. 1968) (burden is on the insurer to show that all statutory requirements for cancellation of policy have been met, including ten-day notice by premium finance company). In reaching this conclusion, the North Carolina Court of Appeals reasoned:
[T]he burden is upon the insurance company to show that all statutory requirements have been complied with, including the ten days written notice by the premium finance company to the insured ..., prior to the premium finance company requesting cancellation of the policy. We do not think this unduly burdens the insurance company, for that the insurance company has received and has on hand the full premium and before making cancellation and returning any portion of the unearned premium, the insurance company can require the premium finance company to satisfy fully the insurance company that all statutory notices have been given, otherwise, the insurance company will not return any of the premium.
Id. at 371. Placing such a burden on the insurer is consistent with both the plain language of section 627.848 and the apparent purpose of the notice requirement which is to give the insured timely notice of the impending cancellation so as to allow the insured to take appropriate action.
Thus, we answer the question as rephrased in the affirmative and hold that where an insured denies receipt of the notice of intent to cancel required by section 627.848(1), an insurer who raises the defense of cancellation under section 627.848 must prove that the premium finance company complied with the provisions of the statute in order to avoid liability under a contract of insurance.[3]
Although we approve the district court's resolution of the first issue, we quash its decision in connection with the motion to strike INAC's computer printout. First, we do not fault the district court for addressing the admissibility of the computer printout. It appears from the record that INA relied, in part, on the computer printout to support its motion for summary judgment and to refute Cooke's motion for partial summary judgment, both of which motions were the subject of the appeal. See Auto Owners Ins. Co. v. Hillsborough County Aviation Auth., 153 So.2d 722 (Fla. 1963) (appeal from final judgment brings up for review all necessary interlocutory steps leading to final order); Saul v. Basse, 399 So.2d 130 (Fla. 2d DCA 1981) (same).
Turning to the merits of this claim, the district court ruled that the computer *256 printout must be excluded because it "in no way indicates that any notice was mailed to Cooke, or if anything was mailed, the contents of the mailing." 603 So.2d at 524. It also appears that the district court based its ruling in this regard on the fact that the printout is not the best evidence that the notice was mailed. We reject both bases for excluding this evidence.
The fact that the computer printout standing alone may not have been sufficient at the summary judgment stage of the proceedings to prove that INAC mailed a notice of intent to Cooke does not serve as a basis for its exclusion. Such is a consideration that goes to the weight to be given the evidence, not to its admissibility.
Likewise, the best evidence rule, sections 90.952, .953, .954, Florida Statutes (1991), does not require exclusion. The best evidence rule only governs the admissibility of the computer printout if offered to prove the contents of the notice. See § 90.952. It appears the printout was relied upon as evidence that the notice was mailed, which clearly is not a prohibited use of secondary evidence under Florida's best evidence rule. Moreover, even if the printout were offered to prove the contents of the notice, secondary evidence is admissible for such purpose if one of the exceptions set forth in section 90.954 is established.
Thus, for example, the printout would be admissible to prove the contents of the notice if it were established that all originals were lost or destroyed and their unavailability was not the result of bad faith on the part of the proponent of the evidence. § 90.954(1).
Accordingly, we quash that portion of the decision under review that reverses the denial of Cooke's motion to strike the computer printout. However, we approve that portion of the decision that holds summary final judgment in favor of INA improper and remand for further proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and SHAW, J., concur.
GRIMES, J., concurs with an opinion.
HARDING, J., concurs in part and dissents in part with an opinion, in which OVERTON and McDONALD, JJ., concur.
McDONALD, J., dissents.
GRIMES, Justice, concurring.
Under ordinary agency and contract principles, INA should have been able to rely on INAC's notice of cancellation. However, the legislature has seen fit to require, as a condition precedent to cancellation, the prior mailing by the premium finance company to the insured of a notice of intent to cancel. This is not necessarily unfair because premium financing arrangements are of benefit to insurance companies.[4] Moreover, INA had already received full payment of its premium from INAC, so the policy was actually being cancelled to accommodate INAC. Under these circumstances, it is not unreasonable to place the burden on INA to demonstrate that INAC mailed the requisite notice of intent to cancel.
HARDING, Justice, concurring in part and dissenting in part.
I concur with the majority opinion that the computer printout regarding notice to the insured is admissible in evidence. However, I respectfully dissent to the majority holding that an insurance company raising the defense of cancellation under section 627.848 bears the burden of proving that the premium finance company complied with the notice provisions of the statute. Contrary to the majority position, I find that the statute requires the finance company to notify the insured that it has cancelled his policy. I find that the statute is correctly interpreted in Tate v. Hamilton Insurance Co., 466 So.2d 1205, 1206 (Fla. 3d DCA 1985):
Where the finance company is named as attorney-in-fact for the insured, a cancellation by the finance company is equivalent to a cancellation by the insured himself, at least from the insurer's perspective. The onus is thus properly placed on the finance company to notify the insured that it has cancelled the policy on his behalf.
*257 And further, from Bankers Insurance Co. v. Pannunzio, 538 So.2d 61, 62 (Fla. 4th DCA 1989):
Furthermore, the finance company, not the insurer, bears the onus for failing to give the insured notice and the insured may not recover from the insurer for failure of the finance company to comply with the statute.
Thus, I would disapprove the decision of the district court requiring the insurer to prove that the finance company complied with the notice requirement.
OVERTON and McDONALD, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.
[2] Section 627.848, Florida Statutes (1987), provides in pertinent part:

When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be canceled unless cancellation is in accordance with the following provisions:
(1) Not less than 10 days' written notice shall be mailed to each insured shown on the premium finance agreement of the intent of the premium finance company to cancel his insurance contract unless the defaulted installment payment is received within 10 days.
(2) After expiration of such period, the premium finance company shall mail to the insurer a request for cancellation, specifying the effective date of cancellation and the unpaid premium balance due under the finance contract, and shall mail a copy thereof to the insured at his last known address as shown on the premium finance agreement.
... .
(4) Upon receipt of a copy of the cancellation notice by the insurer or insurers, the insurance contract shall be canceled with the same force and effect as if the notice of cancellation had been submitted by the insured himself, without requiring any further notice to the insured or the return of the insurance contract.
[3] We disapprove Bankers Insurance Co. v. Pannunzio, 538 So.2d 61 (Fla. 4th DCA 1989), to the extent it conflicts with this decision.
[4] The record in this case even reflects that INA and INAC are both CIGNA companies.