# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00331-CV

**Plasma Fab, LLC and Russell McCann, Appellants**

**v.**

**BankDirect Capital Finance, LLC, a Subsidiary of Texas Capital Bank, N.A.; and Scottsdale Insurance Company, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-12-001816, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

### O P I N I O N

Plasma Fab, LLC and Russell McCann, sole owner of Plasma Fab, (jointly Plasma Fab) appeal the trial court's order granting the motions for summary judgment of BankDirect Capital Finance, LLC, a Subsidiary of Texas Capital Bank, N.A., and Scottsdale Insurance Company. The central issue in BankDirect's and Scottsdale's motions for summary judgment, and on appeal, is whether a general liability insurance policy Plasma Fab purchased from Scottsdale and financed through premium finance company BankDirect was in effect at the time of Plasma Fab's loss. For the reasons that follow, we affirm the trial court's order in part and reverse and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Plasma Fab, an ornamental iron construction contractor, purchased a general liability policy from Scottsdale in May 2008 and financed payment through premium finance company

BankDirect. BankDirect paid all premiums in advance, and Plasma Fab was to make monthly payments to BankDirect. The premium finance agreement gave BankDirect a limited power of attorney and authority to cancel the policy on behalf of Plasma Fab and seek a refund of unearned premiums for nonpayment of premium "after proper notice has been mailed as required by law." Plasma Fab was chronically late making payments, and twice the policy was cancelled and reinstated. It is the third cancellation that is at issue.

On November 24, 2008, BankDirect prepared a notice of intent to cancel the policy effective December 4, 2008, which was ten days following the date the notice was prepared. However, BankDirect did not mail the notice of intent to cancel to Plasma Fab until the next day, November 25, 2008, so that the stated date of cancellation was only nine days after the date the notice was mailed. On December 4, 2008, after 5:00 p.m., BankDirect mailed a notice of cancellation to Scottsdale effective December 4, 2008.

In February 2009, Plasma Fab was sued for causing a fire on December 8, 2008, that destroyed the La Frontera apartment complex in Round Rock, Texas. Scottsdale denied coverage on the ground that the policy had been cancelled prior to the fire. After a judgment was rendered against Plasma Fab for approximately $6 million, Plasma Fab filed suit against Scottsdale for breach of contract and violations of the Insurance Code for which remedy is allowed under the Deceptive Trade Practices Act (DTPA). *See* Tex. Ins. Code §§ 541.060(a)(1), (a)(2)(A), (a)(3); Tex. Bus. & Com. Code § 17.50(4). Plasma Fab also sued BankDirect for breach of contract, breach of fiduciary duty, deceptive trade practices, and negligent misrepresentation. Scottsdale and

2

BankDirect filed motions for summary judgment on all claims, which the trial court granted. This appeal followed.[1]

## DISCUSSION

In five issues, Plasma Fab challenges the trial court's summary judgment on the ground that the policy had not been effectively cancelled at the time of the fire. We review a trial court's decision to grant summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216.

**Waiver**

We begin with Plasma Fab's fifth issue, in which it addresses BankDirect's contention in its motion for summary judgment that Plasma Fab waived its right to complain of cancellation of the policy by cashing BankDirect's check for the return of unearned premiums. Waiver is an affirmative defense that must be pleaded and proven by the party asserting it. *See* Tex. R. Civ. P. 94; *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 344

---

[1] Plasma Fab also filed motions for partial summary judgment against Scottsdale and BankDirect, which the trial court denied, but Plasma Fab does not appeal the denial of its motions.

(Tex. 2011). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Although waiver is usually a question of fact, where, as here, the relevant facts are clearly established and undisputed, it becomes a question of law. *Jernigan v. Langley*, 111 S.W.3d 153, 156–57 (Tex. 2003) (per curiam).

The record shows that BankDirect issued check number 92444 dated May 8, 2009, in the amount of $205.82. Although the check was made payable to Plasma Fab, LLC, it was endorsed for deposit by William Gammon Insurance, Plasma Fab's insurance agent. There is no evidence in the summary judgment record indicating when, how, or even whether the refund was subsequently transferred to and accepted or cashed by Plasma Fab. Nor is there any evidence showing that Plasma Fab was aware of its right to complain of the cancellation and intentionally relinquished or knowingly acted inconsistently with that right. On this record, we cannot conclude that BankDirect met its summary judgment burden of establishing as a matter of law its affirmative defense that Plasma Fab waived its complaint concerning cancellation of the policy. *See* Tex. R. Civ. P. 94; *Kirk v. Kemper Investors Life Ins. Co.*, 448 F. Supp. 2d 828, 838–39 (S.D. Tex. 2006) (explaining that insurer had not shown waiver where testimony of insured's life insurance beneficiary did not indicate he knew he had right to bring claim or that by accepting check he was giving up that claim, and where there was no evidence he consulted attorney); *Italian Cowboy Partners*, 341 S.W.3d at 344; *Knott*, 128 S.W.3d at 215–16; *cf. Cates v. Continental Cas. Co.*, 366 S.W.2d 126, 127–28 (Tex. Civ. App.—Dallas 1963, no writ) (where insured endorsed and

4

cashed refund check with statement on back that it was in full refund of all premiums and policy was surrendered as null and void from date of issue, parties entered new binding contract and insured could not sue insurer under policy).  We sustain Plasma Fab's fifth issue.

**Plasma Fab's Claims Against BankDirect**

*Power of Attorney*

In its second issue, Plasma Fab challenges the summary judgment as to BankDirect on the ground that the cancellation was ineffective because BankDirect failed to comply with statutory requirements and therefore lacked authority to cancel under the terms of the power of attorney.  Although Plasma Fab couches its argument in terms of BankDirect's "lack[ing] authority" and "ha[ving] no power," its assertions amount to an argument that BankDirect exceeded the authority given it under the limited power of attorney.  The premium finance agreement provided as follows:

> 4.  Power of Attorney. Insured hereby irrevocably appoints BankDirect as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below) and, after proper notice has been mailed as required by law, grants to BankDirect authority to effect cancellation of the Policies, and to receive any unearned premium or other amounts with respect to the Policies assigned as security herein, and to sign any check or draft issued thereto in Insured's name and to direct the insurance companies to make said check or draft payable to BankDirect. . . .

By its plain language, the agreement afforded BankDirect authority to cancel the policy only upon the occurrence of two conditions—default by Plasma Fab and the mailing by BankDirect of proper notice as required by law.  It is undisputed that Plasma Fab failed to timely pay its premium and defaulted, thus triggering the first condition of the power of attorney.  Plasma Fab argues that

5

BankDirect also failed to meet the second condition by failing to comply with the notice requirements of the Premium Finance Act. *See* Tex. Ins. Code §§ 651.001–.209 (the Act). Section 651.161(b) of the Act provides that to cancel for nonpayment of premium, a premium finance company must mail to the insured a written notice that the company will cancel by a stated date unless the default is cured, and the stated date "may not be earlier than the 10th day after the date the notice is mailed." *See id.* § 651.161(b). It is clear from the record that BankDirect mailed a notice of intent to cancel with an effective date only nine days after the date of the mailing.

BankDirect does not dispute that it failed to strictly comply with section 651.161(b) and instead focuses on the effectiveness of the cancellation in light of its failure to comply. BankDirect cites Texas and federal cases involving cancellations by insurance companies under policy terms and cases from other state jurisdictions involving cancellations by premium finance companies. The courts in these cases generally hold that notices of cancellation that do not comport with policy terms or the applicable premium finance statute are not void but become effective on the earliest date allowed by the policy or statute. *See, e.g.*, *SGF Global, Inc. v. Hartford Cas. Ins. Co.*, Civ. Action No. H-04-4534, 2007 U.S. Dist. LEXIS 8309, at \*11 (S.D. Tex. Feb. 27, 2007); *Wright v. Rumble*, 476 A.2d 1250, 1253 (N.J. Super. Ct. App. Div. 1984). BankDirect urges us to apply this "substantial compliance" approach to the facts of this case.

However, BankDirect does not directly address its authority under the power of attorney. It has cited no authority, and we have found none, applying a substantial compliance standard in determining whether actions taken under a power of attorney fall within the authority

6

granted by the power of attorney.[2] To the contrary, it is well established that courts are to construe powers of attorney strictly so as to exclude the exercise of power not clearly given. *See Gouldy v. Metcalf*, 12 S.W. 830, 831 (Tex. 1889) (authority conferred by power of attorney strictly construed to exclude exercise of any power not warranted by actual terms used or "as a necessary means of executing the authority with effect"); *Natho v. State*, No. 03-11-00498-CR, 2014 Tex. App. LEXIS 1427, at *8 (Tex. App.—Austin Feb. 6, 2014, pet. ref'd) (not designated for publication) (citing *Gouldy*, 12 S.W. at 831). "The nature and extent of the authority granted must be ascertained from the instrument granting the power of attorney and such instrument is to be strictly construed to limit the authority of the attorney in fact." *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 145 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.).

Here, the grant of authority under the power of attorney was not broad; instead, the language unambiguously limited BankDirect's authority to cancel the policy to circumstances in which two conditions were met. It is undisputed that BankDirect failed to meet the second condition by mailing the notice of intent to cancel only nine days before the cancellation date stated in the notice. In light of the long-standing rule of construction that we construe powers of attorney strictly so as to limit the authority of the attorney in fact, *see Gouldy*, 12 S.W. at 831; *Kinabrew*, 589 S.W.2d at 145, and in the absence of any authority for applying a more lenient standard, we cannot conclude that BankDirect established as a matter of law that it was within its authority to cancel the policy under the power of attorney. *See AVCO Corp. v. Interstate SW, Ltd.*, 251 S.W.3d 632, 664 (Tex.

---

[2] We also observe that BankDirect has cited no authority for applying the substantial compliance approach taken in cases involving notices of *cancellation* to a statutorily required notice of *intent to cancel*.

7

App.—Houston [14th Dist.] 2007, pet. denied) (where power of attorney granted authority to prosecute certain claims as of 1996, authority did not extend to tort claims arising subsequently); *Hardy v. Robinson*, 170 S.W.3d 777, 781 (Tex. App.—Waco 2005, no pet.) (strictly construed, power of attorney authorized attorney in fact to pursue specific lawsuit and create trust from proceeds but did not itself create trust); *Gittings, Neiman-Marcus, Inc. v. Estes*, 440 S.W.2d 90, 92–93 (Tex. Civ. App.—Eastland 1969, no writ) (power of attorney authorizing attorney in fact to "take possession of property" and "handle it [to] obtain the largest return consistent with good business practices" did not authorize attorney in fact to bind principal as guarantor of debt of another); *Tetens v. Garcia*, No. 03-96-00147-CV, 1996 Tex. App. LEXIS 5019, at *7–8 (Tex. App.—Austin Nov. 13, 1996, no writ) (not designated for publication) (where power of attorney conferred broad powers to manage properties and to "do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises," as well as numerous specific powers, attorney in fact exceeded authority by altering funds in a manner that removed trust beneficiary).

We therefore conclude that BankDirect failed to meet its burden of showing that it was entitled to summary judgment as a matter of law as to BankDirect's claims for breach of contract and breach of fiduciary duty. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16; *Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App.—Texarkana 2001, pet. denied) (power of attorney creates agency relationship, and agent owes fiduciary duty to principal with respect to matters within scope of agency); *Tetens*, 1996 Tex. App. LEXIS 5019, at *10 (appointment of attorney in fact creates fiduciary relationship and attorney in fact who exceeded authority under

8

power of attorney breached fiduciary duty to principal). We sustain Plasma Fab's second issue as to BankDirect's exceeding its authority under the power of attorney. For reasons discussed below, however, we do not conclude that cancellation was ineffective, and we overrule Plasma Fab's second issue as to that argument.

### *Limitation of Liability*

We turn next to Plasma Fab's third issue, in which it addresses BankDirect's alternative argument in its motion for summary judgment that even if BankDirect acted improperly in exercising its right under the power of attorney to cancel the policy, BankDirect is not liable for Plasma Fab's loss under the terms of the limitation of liability provision in the premium finance agreement. The agreement included the following provision:

> 16. Liability. Neither BANKDIRECT nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by BANKDIRECT or its assignee of the rights conferred herein, including, but not limited to BANKDIRECT's exercise of the right of cancellation, except in the event of willful or intentional misconduct by BANKDIRECT.

Plasma Fab contends that this provision did not provide fair notice of BankDirect's intent to exculpate itself from liability for future occurrences and was therefore unenforceable.

As a pre-injury release of BankDirect's liability for losses, the limitation of liability provision is a risk-shifting contractual agreement, and to be enforceable, it must satisfy the fair notice doctrine. *See Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 332 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507–09 (Tex. 1993)

9

(holding fair notice requirements apply to releases and other exculpatory agreements)).  The fair

notice requirements include the conspicuousness requirement and the express negligence doctrine.

*Dresser*, 853 S.W.2d at 508; *Sydlik*, 195 S.W.3d at 332.  An agreement that fails to satisfy either of

the two requirements is unenforceable as a matter of law.  *Storage & Processors, Inc. v. Reyes*,

134 S.W.3d 190, 192 (Tex. 2004).  Whether a provision complies with the fair notice requirements

is a question of law for the court.  *Littlefield v. Schaefer*, 955 S.W.2d 272, 275 (Tex. 1997); *Dresser*,

853 S.W.2d at 509.

The dispositive issue, then, is whether BankDirect established as a matter of law that

the limitation of liability provision is conspicuous.  The supreme court has adopted the Uniform

Commercial Code (UCC) definition of conspicuousness for risk-shifting agreements such as this that

relieve a party of responsibility in advance.  *See Dresser*, 853 S.W.2d at 511 (adopting prior version

of definition).  The current UCC definition provides:

> (10) "Conspicuous," with reference to a term, means so written, displayed, or
> presented that a reasonable person against which it is to operate ought to have noticed
> it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous
> terms include the following:
>
>> (A) a heading in capitals equal to or greater in size than the surrounding text,
>> or in contrasting type, font, or color to the surrounding text of the same or
>> lesser size; and
>>
>> (B) language in the body of a record or display in larger type than the
>> surrounding text, or in contrasting type, font, or color to the
>> surrounding text of the same size, or set off from surrounding text of
>> the same size by symbols or other marks that call attention to the
>> language.

Tex. Bus. & Com. Code § 1.201(10). Under this definition, a provision is conspicuous when a reasonable person ought to have noticed it. *Id.*; *Dresser*, 853 S.W.2d at 511. Stated differently, "'something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" *Reyes*, 134 S.W.3d at 192 (quoting *Dresser*, 853 S.W.2d at 508) (brackets in original); *Sydlik*, 195 S.W.3d at 332. Language may satisfy the conspicuousness requirement by appearing in capital headings, contrasting type, font, or color, or an extremely short document, or by otherwise calling attention to itself. *See* Tex. Bus. & Com. Code § 1.201(10); *Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 511.

Applying these standards to the provision at issue, we conclude that BankDirect did not meet its burden of establishing as a matter of law that the limitation of liability in the premium finance agreement is conspicuous. *See Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 511. The summary judgment evidence shows that it is located in paragraph 16, in the second column of a page that appears to be the third page of the agreement, and is in the same small print and font as the remainder of the agreement. There are no bold or capital letters, other than the name "BANKDIRECT," no symbols or other marks to call attention to it, and its heading is "Liability," not "Limitation of Liability." Therefore, BankDirect has not shown as a matter of law that the provision complies with the fair notice requirement of conspicuousness. *See Reyes*, 134 S.W.3d at 192; *Knott*, 128 S.W.3d at 215–16; *Dresser*, 853 S.W.2d at 511 (provision not conspicuous where it appeared on back of work order in series of numbered paragraphs without headings or contrasting type and document not short enough so that every term considered conspicuous); *compare Sydlik*, 195 S.W.3d at 332 (release conspicuous where document was only one page with three paragraphs

and statement in large, bold, underlined letters at top that it was release and where releasing party initialed each paragraph). Because we conclude that Bank Direct has not met its burden on conspicuousness, we need not reach Plasma Fab's argument that BankDirect failed to show that the limitation of liability provision does not meet the express negligence doctrine. *See Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 510. We sustain Plasma Fab's third issue.[3]

**Plasma Fab's Claims against Scottsdale**

### *Scottsdale's Liability for BankDirect's Actions*

As part of its second issue, Plasma Fab argues that the trial court erred in granting summary judgment in favor of Scottsdale because Scottsdale failed to establish as a matter of law that the cancellation was effective. Plasma Fab contends that Scottsdale's failure to verify that BankDirect complied with statutory cancellation procedures rendered the cancellation ineffective. Although no Texas cases have resolved this issue, a number of cases from other jurisdictions involving similar fact patterns and statutory schemes have addressed it. A leading case supporting Plasma Fab's position, and the primary case on which Plasma Fab relies, is *Insurance Co. of N. Am. v. Cooke*, 624 So. 2d 252 (Fla. 1993). In *Cooke*, the Florida Supreme Court, when faced with a certified question from the district court involving statutory language similar to section 651.161(b), held that where an insured denies receipt of the notice of intent to cancel, an insurer who raises the defense of cancellation must prove the premium finance company complied with the statutory

---

[3] Having concluded that BankDirect failed to meet its summary judgment burden of establishing that the provision is enforceable, we do not reach Plasma Fab's fourth issue, in which it argues in the alternative that even if the provision is valid, it does not relieve BankDirect of liability because BankDirect engaged in willful or intentional misconduct.

12

provisions in order to avoid liability under an insurance policy. *See id.* at 255; *see also Kende Leasing Corp. v. A.I. Credit Corp.*, 524 A.2d 1306, 1308, 1311–13 (N.J. Super. Ct. App. Div. 1987) (where insured denied receipt of notice of intent to cancel, court reasoned that if insurer could effectively cancel despite failure of premium finance company to send notice of intent to cancel, notice requirement would be meaningless and remedy against premium finance company would be less effective because purpose of notice was to prevent cancellation, and held cancellation ineffective and insurer liable on policy as if cancellation had not occurred); *see also Felican v. State Farm Mut. Ins. Co.*, 449 N.Y.S.2d 887, 892 (Sup. Ct. N.Y. App. Term 1982) (where there was insufficient proof premium finance company mailed notice of cancellation, insurer did not meet burden to prove policy had been cancelled and was required to afford coverage).

The opposing view is represented by *Carr v. Peerless Ins. Co.*, 724 A.2d 454 (Vt. 1998). In *Carr*, the court reasoned that there was nothing in the statutory scheme making the insurer responsible for the improper action of the premium finance company, the insurer was not a party to the premium finance agreement, and there was no supervisory or monitoring relationship between the insurer and the premium finance company. *See id.* at 458. The court concluded that "any wrong here was committed by the premium finance company, and it is therefore the party to whom the insured should turn for recovery." *See id.* at 459; *see also Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1468–70 (7th Cir. 1994) (reasoning that to construe premium finance act "as reaching beyond premium finance companies to protect insureds by giving them recourse against insurers as well, would torture the Act's ordinary meaning" and holding that language prohibiting cancellation without compliance with notice requirements applied to premium finance company but

13

not insurer); *Illinois Ins. Guar. Fund v. Evanston Paper & Paper Shredding Co.*, 649 N.E.2d 568, 569 (Ill. App. Ct. 1995) (holding that if insured grants premium finance company power to cancel, insurer may cancel at premium finance company's behest and that if premium finance company violates its statutory duties, insured must seek reparation from premium finance company and not insurer, who has no continuing duty to insure under cancelled contract).

We are more persuaded by the reasoning of the courts in *Carr*, *Jabin*, and *Evanston Paper*. We must construe the Premium Finance Act as a whole according to its plain language and ordinary meaning. *See Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013); *Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). The Act regulates premium finance companies and agreements. *See* Tex. Ins. Code §§ 651.001–.209. The plain language of section 651.161, which provides that *a premium finance company* may not cancel a policy except as provided by that section, comports with the Act's function of regulating premium finance companies, not insurers. *See id.* § 651.161(a); *see also Jabin*, 16 F.3d at 1468. Nothing in the statutory scheme either imposes the requirements of section 651.161 on the insurer or suggests that the insurer is responsible for the failure of the premium finance company to comply, and to construe it so as to impose such responsibility on the insurer would "torture" the statute's ordinary meaning. *See Jabin*, 16 F.3d at 1468; *Zanchi*, 408 S.W.3d at 376; *Carr*, 724 A.2d at 458. We cannot read the phrase "[a]n insurance premium finance company may not cancel an insurance contract" to mean "an insurance premium finance company or an insurer may not cancel an insurance contract." *See Zanchi*, 408 S.W.3d at 376; *Texas Citizens*, 336 S.W.3d at 624; *Evanston*, 649 N.E.2d at 570–71 (citing *Haft v. Charter Oak Fire Ins.*, 635 N.E.2d 843, 938 (Ill. App. Ct. 1994)) (if

14

legislature had intended violation of notice provision to block cancellation of policy it could have so stated).[4]

Further, Scottsdale is not a party to the premium finance agreement and has no supervisory or monitoring role as to BankDirect. *See Carr*, 724 A.2d at 458. Moreover, we agree with the court in *Carr* that an insured's remedy against a premium finance company is no less effective than a remedy against the insurer in discouraging improper cancellations by the premium finance company in the future. *See id.* at 459. We therefore conclude that Scottsdale met its summary judgement burden of establishing that under the plain language and ordinary meaning of section 651.161, it had no obligation to verify BankDirect's compliance with the statutory notice provisions and that cancellation was effective regardless of BankDirect's failure to comply with the statutory notice requirements. *See Jabin*, 16 F.3d at 1468, 1470; *Zanchi*, 408 S.W.3d at 376; *Texas Citizens*, 336 S.W.3d at 624; *Knott*, 128 S.W.3d at 215–16; *Carr*, 724 A.2d at 458–59; *see also Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981) (agent acting within scope

---

[4]  The language of section 651.161 also serves to distinguish *Insurance Co. of N. Am. v. Cooke*, 624 So. 2d 252 (Fla. 1993) and *Felican v. State Farm Mut. Ins. Co.*, 449 N.Y.S.2d 887 (Sup. Ct. N.Y. App. Term 1982). The applicable statutes construed in those cases provided broadly that "the insurance contract shall not be cancelled" unless such cancellation is effectuated in accordance with the statutory notice provisions. *See Cooke*, 624 So. 2d at 255 n.2; *Felican*, 449 N.Y.S.2d at 890. In contrast, the language of section 651.161 specifically prohibits cancellation only by "the insurance premium finance company." *See* Tex. Ins. Code § 651.161(a). In addition, we observe that after the Florida Supreme Court's holding in *Cooke*, the Florida Legislature amended the premium finance statute to provide that upon receipt of the cancellation notice by the insurer, "the insurance contract shall be cancelled with the same force and effect as if the notice of cancellation had been submitted by the insured himself, *whether or not the premium finance company has complied with the notice requirement of this subsection* . . . ." *See Bamboo Garden of Orlando, Inc. v. Oak Brook Prop. & Cas. Co.*, 773 So. 2d 81, 83–84 (Fla. Dist. Ct. App. 2000) (discussing legislative changes and concluding it was legislature's intent not to burden insurer with responsibility of ensuring finance company complies with notice provisions).

of apparent authority binds principal as though principal had performed action). We overrule Plasma Fab's second issue as to Scottsdale's obligation to verify BankDirect's compliance with statutory notice requirements.

### *Advance Written Notice*

In its first issue, Plasma Fab argues that Scottsdale was not entitled to summary judgment because it failed to establish cancellation as a matter of law. In particular, Plasma Fab argues that there was no "advance written notice" of cancellation. The policy provided that the insured may cancel the policy "by mailing or delivering to [Scottsdale] advance written notice of cancellation." Plasma Fab contends that because BankDirect did not mail the notice of cancellation until after 5:00 p.m. on December 4, 2008, Scottsdale could not have received it until December 5 at the earliest, making cancellation effective December 4 retroactive. Consequently, Plasma Fab argues, the notice was not "advance." It is Plasma Fab's contention that Scottsdale, which had the burden to prove its affirmative defense of cancellation, had to establish that this provision of the policy had been met. Although cancellation is an affirmative defense on which Scottsdale had the burden of proof, *see* Tex. R. Civ. P. 94; *Anchor Cas. Co. v. Crisp*, 346 S.W.2d 364, 367 (Tex. Civ. App.—Amarillo 1961, no writ) (insurer had burden to establish defense of cancellation); *Republic W. Ins. Co. v. Rockmore*, No. 3-02-CV-1569-K, 2005 U.S. Dist. LEXIS 327, at *21 (N.D. Tex. Jan. 10, 2005) ("Under Texas law, cancellation is an affirmative defense which must be proved by the insurer at trial."), we do not find this argument persuasive.

First, is was Plasma Fab who cancelled the policy, through its agent, acting with apparent authority under the power of attorney, *see Biggs*, 611 S.W.2d at 629, and Scottsdale merely

16

complied with the terms of the policy in cancelling as of the date specified by Plasma Fab through BankDirect. Further, the policy also provided that the notice of cancellation "will state the effective date of cancellation" and "[t]he policy period will end on that date." Texas courts have long held that, in circumstances other than retroactive cancellation after a loss has occurred, when less notice is given than is required by the policy, cancellation becomes effective at the earliest date allowed under the contract. *See, e.g.*, *Brewer v. Maryland Cas. Co.*, 245 S.W.2d 532, 534 (Tex. Civ. App.—San Antonio 1952, writ ref'd n.r.e.) (notice of cancellation effective at earlier date than permitted by policy controlled by the policy); *Frontier-Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co.*, 166 S.W.2d 746, 747 (Tex. Civ. App.—Fort Worth 1942, no writ) (notice of cancellation effective immediately or within less time that provided in policy sufficient to cancel policy at end of time set out in policy); *California-Western States Life Ins. Co. v. Williams*, 120 S.W.2d 844, 846 (Tex. Civ. App.—El Paso 1938, writ dism'd) (explaining that notice that the policy "is hereby cancelled" would take effect five days after receipt of notice, as provided by policy).

Here, the record reflects that Plasma Fab, through BankDirect, gave notice of cancellation to Scottsdale, with the stated effective date of December 4, 2008, and that Plasma Fab received the notice on December 5, 2008. Under the terms of the policy requiring advance written notice, cancellation was therefore effective subsequent to receipt on December 5, 2008, or on December 6, 2008, at the latest. *See Brewer*, 245 S.W.2d at 534; *Frontier-Pontiac*, 166 S.W.2d at 747; *Williams*, 120 S.W.2d at 846. Either way, advance written notice of cancellation was provided

17

prior to cancellation, and cancellation was effective prior to the fire.[5]  Thus, we conclude that

Scottsdale met its burden of establishing that the policy was cancelled by Plasma Fab in accordance

with the terms of the policy and that it was entitled to summary judgment on this issue as a matter

of law.[6]  *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16; *see also Lazo v. RSI Int'l, Inc.*,

No. 14-06-00432-CV, 2007 Tex. App. LEXIS 7077, at *9 (Tex. App.—Houston [14th Dist.]

Aug. 30, 2007, no pet.) (mem. op.) (construing identical policy language and holding that where

premium finance company sent notice of cancellation on July 3, 2001, to be effective July 3, 2001,

contract was cancelled effective July 3, 2001).  We overrule Plasma Fab's first issue.

### *Reinstatement*

In the alternative to the arguments in its first and second issues, Plasma Fab contends

that even if the policy was effectively cancelled, Scottsdale failed to establish as a matter of law that

it did not reinstate the policy with no interruption in coverage.  The summary judgment record does

not support this argument.  The notice of cancellation at issue was mailed by BankDirect on

December 4, 2008, and resulted from Plasma Fab's failure to pay its November premium.  Prior to

that, on November 19, 2008, Scottsdale had mailed to BankDirect a notice of cancellation that was

---

[5]  We find Plasma Fab's reliance on *Stroop v. Northern County Mutual Insurance Co.* misplaced.  *See* No. 05-97-01517-CV, 2000 Tex. App. LEXIS 8082 (Tex. App.—Dallas Dec. 4, 2000, pet. denied).  In *Stroop*, the issue was whether an insured and an insurer could retroactively cancel a policy after a collision occurred when the insured was covered by another insurer, *see id.* at *8, the parties stipulated that no advance written notice had been provided, *see id.* at *3, and the court held that the attempted cancellation violated public policy, *see id.* at *15.  We find *Stroop* inapposite.

[6]  Plasma Fab also contends that Scottsdale's burden to establish cancellation included proving that BankDirect complied with the statutory notice provisions, an argument we have already rejected.

to be effective December 1, 2008. That notice of cancellation was based on Plasma Fab's failure to pay its October premium. However, although Plasma Fab was late in paying, it had paid its October premium on November 11, 2008. Consequently, on December 9, 2008, Scottsdale sent a notice of reinstatement, rescinding the notice of cancellation that was to be effective *December 1, 2008*, for failure to pay the October premium and reinstating the policy for the second time. In the meantime, Plasma Fab had become delinquent on its November premium, and BankDirect prepared the notice of intent to cancel at issue, stating a cancellation date of December 4, 2008. Thus, by its express terms, the reinstatement dated December 9 applied to the cancellation that was to be effective December 1, not to the cancellation stating an effective date of December 4, 2008, for which Scottsdale subsequently declined reinstatement. We conclude that Scottsdale met its summary judgment burden of establishing that it did not reinstate the policy, *see Knott*, 128 S.W.3d at 215–16, and overrule the remainder of Plasma Fab's first and second issues.

### Claims for Violations of Insurance Code and DTPA

In its reply brief, Plasma Fab argues that Scottsdale was not entitled to summary judgment as to its claims against Scottsdale for violations of the Insurance Code for which remedy is allowed under the DTPA. *See* Tex. Ins. Code §§ 541.060(a)(1), (a)(2)(A), (a)(3); Tex. Bus. & Com. Code § 17.50(4).[7] Plasma Fab claimed that Scottsdale committed these violations by issuing

---

[7] Ordinarily, an issue raised for the first time in a reply brief is waived and need not be considered by an appellate court. *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Hutchison v. Pharris*, 158 S.W.3d 554, 563 (Tex. App.—Fort Worth 2005, no pet.). However, Scottsdale fully briefed the issue of Plasma Fab's claims for violations of the Insurance Code and DTPA, and Plasma Fab responded in its reply brief. Therefore, this issue is properly before us. *See McAlester Fuel*, 257 S.W.3d at 737 (addressing

19

a false representation in denying Plasma Fab's claim when Scottsdale had reinstated the policy and issued Endorsement Number 7 voiding Endorsement Number 6, which purported to cancel the policy retroactive to December 4, 2008. Having already concluded that the policy was effectively cancelled and not reinstated, we further conclude that Scottsdale established as a matter of law that its denial of the claim was not a false representation as a matter of law. *See Knott*, 128 S.W.3d at 215–16. Further, the endorsements were not issued until after the policy was cancelled, and the policy they purported to amend was no longer in effect. There was nothing to amend, and the endorsements were a nullity. *See Lazo*, 2007 Tex. App. LEXIS 7077, at *9–10. We overrule Plasma Fab's reply issue as to its claims against Scottsdale for violations of the Insurance Code and DTPA.

## CONCLUSION

We reverse the trial court's order granting BankDirect's motion for summary judgment as to Plasma Fab's claims against BankDirect and remand for further proceedings consistent with this opinion. We affirm the trial court's order in all other respects.

---

contentions asserted in reply brief that replied to issues fully briefed by appellee); *Hutchison*, 158 S.W.3d at 563 (issue raised by appellant for first time in reply brief properly before court because parties joined issue when appellee fully argued issue and appellant replied); *cf. Sunbeam Envtl. Servs. Inc. v. Texas Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.) (where appellant raised issue in reply brief that was not raised in opening brief *or argued by appellee*, appellant waived issue).

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part; Reversed and Remanded in Part;

Filed:   May 8, 2015

21