# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50073

United States Court of Appeals
Fifth Circuit

**FILED**
January 3, 2019

Lyle W. Cayce
Clerk

CONESTOGA TRUST, also known as Conestoga Settlement Trust;
CONESTOGA TRUST SERVICES, L.L.C.,

      Plaintiffs - Appellants

v.

COLUMBUS LIFE INSURANCE COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-152

Before HIGGINBOTHAM and HIGGINSON, Circuit Judges.*

PATRICK E. HIGGINBOTHAM, Circuit Judge:**

This appeal arises from a dispute over the termination of a life insurance policy. Appellant Conestoga Trust sued Appellee Columbus Life Insurance Company alleging that Columbus failed to mail a grace notice prior to

---

* Judge Edward C. Prado, a member of our original panel, retired from the court on April 2, 2018, to become His Excellency the United States Ambassador to the Argentine Republic. He therefore did not participate in this matter, which is decided by a quorum. *See* 28 U.S.C. § 46(d).

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50073

terminating the policy following Conestoga's failure to pay the life insurance policy premiums. The jury was asked to consider one question: whether Columbus failed to mail the grace notice as required by the policy. The jury answered no, the district court entered judgment in favor of Columbus, and this appeal followed. We affirm in part, and reverse and remand, in part.

I.

Columbus issued a universal life insurance policy on the life of Peggy Mulvaney, a Michigan resident, in October 2007. Three years later, James Settlement Services International, LLC purchased the Policy in a life settlement transaction. JSS is a life settlement company that buys life insurance policies and sells fractions of the death benefits to investors. The Policy was sold by JSS to Conestoga, who contracted with Provident Trust Group, LLC to manage its policies and serve as its escrow agent to hold investor funds and pay life insurance premiums. In providing that service, Provident called insurers each month to confirm the monthly premium due and sent monthly emails to Conestoga to obtain approval to pay premiums owed.

In mid-2014, Provident erroneously stopped paying premiums on the Policy and stopped calling Columbus to determine the minimum payment due. Consequently, the Policy entered a grace period. Once that occurs, the Policy provides:

> We [Columbus] will allow a Grace Period. We will mail You . . . a notice indicating the minimum premium You must pay in order to keep the policy in force. . . .
>
> You will have 61 days from the date We mail You this notice to pay or mail enough premium. If You do not pay or mail the needed premium within the 61-day Grace Period, all coverage provided by this policy will terminate without value at the end of the 61-day period. We will rely on the postmark to determine the date of mailing.

2

No. 17-50073

Pursuant to this provision, Columbus contends that it mailed Conestoga a grace notice dated November 17, 2014, triggering the 61-day grace period.[1] Conestoga maintains that it never received the Grace Notice, and neither Provident nor Conestoga paid the overdue $15,223.96 premium to Columbus within the 61-day period.

As a result, Columbus terminated the Policy and mailed Conestoga a Notice of Loss of Coverage. Conestoga received the Notice of Loss of Coverage and wired the overdue balance to Columbus. Two days later, Columbus faxed a letter to Conestoga, indicating that the wired funds had not and would not be applied to the Policy, as "[t]he funds were not timely paid" and the Policy has "lapsed and is no longer in force." Although the Policy permits reinstatement of coverage within a five-year period, as both the Notice of Loss of Coverage and the letter rejecting the wired funds indicated, Conestoga did not apply for reinstatement.

Conestoga initiated this action in the Western District of Texas, alleging that Columbus had breached the life insurance policy by failing to "mail and/or postmark" the Grace Notice and seeking a declaratory judgment that the Policy is in full force and effect. Columbus moved for summary judgment, submitting evidence of Columbus's mailing procedures and arguing that applicable law precluded Conestoga's attorneys' fees claim. The district court granted in part and denied in part Columbus's motion. The court determined that Texas law applied to Conestoga's breach of contract claim; that the sole issue was whether Columbus mailed the Grace Notice; and that a genuine issue of material fact remained on that issue.[2] The court, however, rejected Conestoga's argument

---

[1] All policyholder correspondence sent by Columbus to Conestoga was mailed to Conestoga's law firm, De Leon & Washburn.

[2] The court first, in conducting a choice-of-law analysis, determined that Michigan and Texas law do not conflict and thus, Texas law applies. *See LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 456–57 (5th Cir. 2011).

that Columbus could only prove the mailing of the Grace Notice with its postmark, deeming that theory "thoroughly unpersuasive." The court additionally determined that Michigan law applied to Conestoga's attorneys' fees claim, thereby barring any fee award.

Before the case proceeded to trial, Conestoga proposed jury instructions that placed the burden on Columbus to prove that it "properly cancelled the Policy." Conestoga's proposed instructions further specified that an insurer must "strict comply" with the termination provisions at issue. Before jury selection, the district court, having received additional briefing on the issue, ruled from the bench that Conestoga had the burden of proof.

At trial, both parties presented circumstantial evidence about the mailing of the Grace Notice. Conestoga presented evidence on the procedures in place at De Leon & Washburn (where the Grace Notice was purportedly mailed) for receiving and sorting mail. The firm's founder, Hector De Leon, testified that Pat Washburn had been put in charge of receiving Conestoga notices and Washburn testified that he had not "lost a client document in [his] career" nor "had problems finding any documents if someone came to [his] office and asked [him] for a particular document."[3] Columbus proffered evidence detailing the printing and mailing process for grace notices and presented data about the batch of mail that included the Grace Notice purportedly sent to Conestoga. The Grace Notice was randomly selected by the machine operator for a quality control audit and, after the audit, the mail items in the batch were placed on a machine for packaging and addressing. Pitney Bowes then conducted an additional quality check and presorted the mail for

---

[3] This testimony aimed to counter Columbus's evidence that Washburn may have misplaced the Grace Notice. For example, Columbus presented evidence that Washburn had a messy office.

delivery to USPS.[4] Conestoga contends that Columbus failed to present direct evidence that the Grace Notice was mailed, arguing that their documentation only goes as far as showing that the Grace Notice was diverted for quality control, faulting Columbus for failing to produce a postmark or certified mail receipt.

At the close of evidence, Conestoga again objected to the court's instruction that placed the burden of proof on Conestoga and to the court's failure to include an instruction that Columbus was required to "strictly comply" with the Policy. The court overruled the objections, and instructed the jury as follows:

> Plaintiffs have the burden of proving their case by a preponderance of the evidence. . . . If you find Plaintiffs have failed to prove any element of their claim by a preponderance of the evidence, then they may not recover on that claim. . . .

> The only issue for your determination is whether Plaintiffs proved by preponderance of the evidence Defendant Columbus Life failed to mail notice of Grace Period and Termination of Coverage as required by the Policy. Damages that may or may not have been incurred by any party should not play a role in your determination.

Accordingly, the jury verdict form presented one question: "Did Columbus Life fail to mail the notice of Grace Period and Termination of Coverage as required by the policy?" The jury answered, "No," and the court entered judgment in favor of Columbus.

Conestoga filed two post-judgment motions. First, Conestoga moved for judgment as matter of law or, alternatively, a new trial pursuant to Rule 50(b), arguing that Columbus presented no evidence of a postmark to determine the date of mailing. Second, Conestoga moved for a new trial pursuant to Rule 59,

---

[4] Pitney Bowes is a company that collects mail from large companies, sorts it, then delivers it to USPS at a discounted rate.

No. 17-50073

arguing the court erred by placing the burden of proof on Conestoga. The court denied both motions, stating the following: "The simple fact is the jury found Columbus Life Insurance Co. did not violate the policy on the only issue in this case—whether the appropriate notice was mailed. The plaintiffs failed to prove to the jury Columbus Life Insurance Co. violated the policy determined this case. No basis for new trial is warranted." Conestoga appeals the final judgment and the court's order denying its post-judgment motions.

## II.

This Court reviews jury verdicts deferentially.[5] "We review the denial of a judgment as a matter of law *de novo*, but we apply the district court's standard: granting judgment as a matter of law only if the 'facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'"[6] "[W]hen evaluating the sufficiency of the evidence, we view all evidence and draw all reasonable inferences in the light most favorable to the verdict."[7]

This Court reviews a denial of a motion for new trial for abuse of discretion.[8] "The district court abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'"[9] Jury instructions are also reviewed for abuse of discretion[10] but a district court's allocation of the burden of proof is reviewed *de novo*.[11]

## III.

---

[5] *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013).

[6] *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015) (quoting *Boh Bros. Constr. Co.*, 731 F.3d at 451).

[7] *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005).

[8] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).

[9] *Cobb v. Rowan Cos.*, 919 F.2d 1089, 1090 (5th Cir. 1991) (quoting *Irvan v. Frozen Food Express, Inc.*, 809 F.2d 1165, 1166 (5th Cir. 1987)).

[10] *Garriott v. NCsoft Corp.*, 661 F.3d 243, 247 (5th Cir. 2011).

[11] *Guajardo v. Tex. Dept. of Criminal Justice*, 363 F.3d 392, 395 (5th Cir. 2004).

No. 17-50073

Conestoga contends that the district court erred in denying its motion for judgment as a matter of law because Columbus failed to strictly comply with the termination provisions of the Policy. Conestoga urges this Court to interpret the Policy as requiring Columbus to create a postmark for the mailing of the Grace Notice. Following non-payment of premiums, the Policy provides that the insurer will send a notice of nonpayment and allows a 61-day Grace Period during which the insured is permitted to pay or mail the needed premium to avoid termination of the Policy. The Policy specifies that the insurer will "rely on the postmark to determine the date of mailing." Conestoga maintains that the postmark language creates an independent requirement that Columbus prove the date of mailing of the Grace Notice by producing the postmark, which Columbus could not do. It also urges that the language of reliance on the postmark to determine the mailing date refers to both the mailing date of the unpaid premium *and* the mailing date of the Grace Notice. Columbus responds, arguing that the Policy does not limit the documentation it can use in litigation to prove the mailing date of the Grace Notice to a postmark. It submits a conflicting interpretation of the Policy's "rely on the postmark" clause, arguing that it applies only to the mailing of the premium payments, not to the mailing of the Grace Notice.

"An insurance policy is a contract, generally governed by the same rules of construction as all other contracts."[12] "When construing a contract, [the Court's] primary concern is to ascertain the intentions of the parties as expressed in the contract," beginning the analysis "with the language of the contract because it is the best representation of what the parties mutually intended."[13] Importantly, "[a]n ambiguity does not arise simply because the

---

[12] *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)).
[13] *Id.*

7

parties offer conflicting interpretations."[14] Where only one party's proposed construction is reasonable, we will conclude that the contract is unambiguous and adopt that party's construction.[15] However, where "both constructions present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous," adopting the construction that most favors the insured.[16]

Conestoga is correct that Texas law indeed requires strict compliance with an insurance policy's termination provision.[17] That stricture, however, does not change the fact that nothing in the plain language of the grace period provision requires Columbus to "create or retain" a postmark when mailing a grace notice. Even assuming arguendo that Conestoga's proffered interpretation—that the "rely on the postmark" language applies to both grace notices and premium payments—is reasonable,[18] Conestoga reads into the grace period provision an evidentiary requirement, i.e. that Columbus "create or retain" a postmark to prove the date of mailing of a grace notice. The plain language of the Policy does not compel such a requirement. The district court did not err in denying Conestoga's motion for judgment as a matter of law.[19]

---

[14] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

[15] *RSUI Indem.*, 466 S.W.3d at 118.

[16] *Id.*

[17] *See U.S. Liab. Ins. Co. v. Baggett*, 285 S.W.2d 804, 806–807 (Tex. App. 1955) ("It is a well-established rule of law that to effect a cancellation . . . the conditions of a policy of insurance . . . must be strictly complied with and followed.").

[18] The reasonableness of that interpretation is questionable given the absurd results that would follow. As Columbus emphasizes, if the "rely on the postmark" language applies to the mailing of the grace notice, any grace notice sent via a separate postal carrier (e.g., Federal Express) would be noncompliant and no other clear evidence of the date of mailing would be permissible to prove delivery of the Grace Notice (e.g., a receipt of hand delivery or a video documenting the hand delivery). Finally, Columbus points out that Conestoga's reading of the contract would preclude Columbus from using metered postage for its millions of mail items per year, instead forcing them to obtain a stamp, postmark, and copy of the postmark for each mail item.

[19] Columbus also argues that the district court correctly denied Conestoga's motion for judgment as a matter of law because Conestoga did not and cannot prove damages, a

No. 17-50073

IV.

Conestoga also contends that because they are entitled to judgment as a matter of law, the case should be remanded for a trial to determine its attorneys' fees. Having held that Conestoga is not entitled to judgment as a matter of law, we turn to the issue of attorneys' fees. Holding that Michigan law applied, the district court granted summary judgment on that issue for Columbus, and Conestoga now challenges that order.

In considering Conestoga's choice of law argument, we apply the choice of law rules of the forum state—here, Texas.[20] Texas follows the "most significant relationship" test from the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, ("RESTATEMENT"), and Section 192 provides:

> The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.[21]

---

necessary element of its breach of contract claim. Columbus contends that because a separate entity bought replacement coverage, and there is no agreement that Conestoga must reimburse that separate entity for the coverage, Conestoga sustained no damages. Conestoga responds that it sought specific performance, not monetary damages. We agree. *See e.g.*, *Temple v. DLJ Mortg. Capital Inc.*, No. 04-12-00113, 2012 WL 5984696, at *3 (Tex. Ct. App. 2012) (rejecting identical argument in breach of contract case where plaintiff sought specific performance, recognizing that "not every breach of contract claim requires the establishment of money damages") (citing *Rasmusson v. LBC PetroUnited Inc.*, 124 S.W.3d 283, 287 (Tex. Ct. App. 2001) (additional citation omitted)).

[20] *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 190–91 (5th Cir. 2010).

[21] RESTATEMENT (SECOND) CONFLICTS OF LAW § 192. In determining whether a state has a "more significant relationship" under § 6 principles, Texas courts examine "(a) the place of contracting, (b) the place of negotiation of the contract; (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015).

9

No. 17-50073

That Section creates a "presumption in favor of the jurisdiction where the insured was domiciled at the time he or she applied for life insurance."[22] Conestoga suggests that the official comments to Section 192 implicate an exception to the general presumption, providing for the application of local law when "the giving of notice of default by the insurance company" is at issue.[23] As the district court correctly noted, however, the particular question here is whether the owner of a life insurance policy who proves that an insurer breached the policy can collect attorneys' fees. Because Mulvaney (the insured) was domiciled in Michigan when she bought the policy, Michigan law applies and Conestoga is unable to collect attorneys' fees, even if it were to succeed on its breach of contract claim.

V.

Conestoga also appeals the district court's order denying its motion for a new trial, suggesting that the district court erred in placing the burden of proof on Conestoga. Columbus responds by reiterating that this is, fundamentally, a breach of contract action for which the plaintiff bears the burden of proof, arguing that the mere fact that Columbus is an insurer doesn't change that analysis. Columbus attempts to distinguish the cases cited by Conestoga by pointing out that in those cases, the insurer sought to *cancel* a policy, unlike here, where Columbus claims it merely let the policy *lapse*.

We now hold that the district court erred in its allocation of the burden of proof. In Texas,[24] the insurer has the burden to prove that it sent a grace

---

[22] *Am. Nat'l Ins. Co. v. Conestoga Settlement Trust*, 442 S.W.3d 589, 598 (Tex. Ct. App. 2014).

[23] RESTATEMENT (SECOND) CONFLICTS OF LAW § 192 cmt. d.

[24] As explained above, the district court held that Texas law applies to the breach of contract claim because there is no conflict between Michigan and Texas law. On appeal, Columbus acknowledges that Texas law applies to the burden of proof issue.

notice that is required prior to termination of the policy.[25] This is true even where the question of whether "the cancellation notice was mailed to the insured" is "the sole jury issue."[26] Columbus attempts to distinguish this case in a number of ways, all of which are ultimately unavailing.[27] Columbus suggests that it does not have the burden of proof because the beneficiary is still alive, and therefore the insured has not been wrongfully denied benefits. Following Columbus's logic, because no benefits have been denied, Conestoga cannot show breach of contract without proving that Columbus failed to mail the Grace Notice and therefore, it must bear the burden of proof. Although there was no formal denial of benefits, coverage under the Policy was indisputably terminated by Columbus. Columbus offers no principled reason to explain why the burden should shift to the insured when the beneficiary is still alive and such a contention does not comport with Texas law.[28] Columbus

---

[25] *W. Fire Ins. Co. v. Reyna*, 495 S.W.2d 57, 59 (Tex. App. 1973) (holding that the insurer had burden of proof on sole jury issue and therefore had right to open and close the argument); *Winters Mut. Aid Ass'n v. Corum*, 297 S.W. 238, 240 (Tex. App. 1927) ("Where notice is required in order to establish a forfeiture for nonpayment of premiums, the burden is on the insurer to show that required notice was given."); *Plasma Fab, LLC v. BankDirect Capital Fin., LLC*, 468 S.W.3d 121, 132–33 (Tex. App. 2015) (finding that insurer "met its burden of establishing that the policy was cancelled . . . in accordance with the terms of the policy" which required advance written notice); 17A COUCH ON INS. § 254:35 (3d Ed. 2016) ("Where an insured denies receiving a proper notice of cancellation, the insurer has the burden of proving compliance with conditions of the policy as to notice.").

[26] *Reyna*, 495 S.W.2d at 59.

[27] Columbus relies heavily on an unpublished case from the District of Maryland (applying Maryland law) where the court, on similar facts, required that the insured prove by a preponderance of the evidence that the insurer failed to fulfill a notice condition before cancelling the policy. *Goldstein v. Lincoln Nat'l Life Ins. Co.*, No. WMN-09-706, 2012 WL 1044325, at *4 (D. Md. Mar. 27, 2012). The case contains no further discussion of the burden of proof issue and Columbus offers no explanation for its applicability to this question of Texas law.

[28] *Texas Mut. Life ins. Co. v. Burns*, 92 S.W.2d 469, 472 (Tex App. 1936) (rejecting insurer's contention on appeal that the trial court erred in placing the burden of proving that notice was mailed on insurer in case where policy was cancelled during the life of the insured). Columbus attempts to distinguish *Burns* based on the fact that the insured there claimed to have fully performed the contract by paying the premiums. We see no reason why the

also attempts to distinguish this case by arguing that here, the policy automatically lapsed by the terms of the agreement, whereas in the cases cited by Conestoga, the policy was cancelled—a discretionary decision made by the insurer. Because Columbus made no discretionary decision, it argues, it did not have the burden of proving it had the right to make that discretionary decision to terminate. The language of the contract, however, belies any argument that the policy "lapsed" by its own terms—the lapse could not occur until the insurer sent the Grace Notice giving the insured the opportunity to pay the missed premiums.[29] The question here then, is whether Columbus complied with that Grace Notice requirement, which is antecedent to the termination. Columbus has the burden to prove that it did.[30]

Having found error, we turn now to remedy. Conestoga claims that the district court's improper placement of the burden constituted prejudicial error because, given the lack of direct evidence, the burden of proof was likely outcome-determinative. Columbus, on the other hand, concludes that any error concerning the burden of proof is harmless because the record demonstrates that Columbus presented ample evidence that it mailed the Grace Notice.

While this court has acknowledged that misallocating the burden of proof might be harmless in some cases, it has also warned that the "class of

---

stipulation here that Conestoga erroneously stopped making payments changes the burden of proof on the mailing of the notice issue.

[29] The contract makes clear that the lapse is not automatic, guaranteeing that the insurer will "not terminate th[e] policy until at least 61 days after" it mails the Grace Notice.

[30] Columbus suggests that allocating the burden of proof to the insurer here contravenes the general rule that a plaintiff has the burden to prove breach of contract. But as we have reiterated, the mere fact that the parties stipulated to other elements of the claim (e.g., the Policy's ownership and the erroneous nonpayment of premiums) does not change the fact that the insurer bears the burden to prove notice under Texas law. Such a result comports with the law of other jurisdictions. *See e.g.*, *Herndon v. Mass. Gen. Life. Ins. Co.*, 28 F. Supp. 2d 379, 381 n.3, 382 (W.D. Va. 1998) (collecting cases from several jurisdictions and holding that "an insurer bears the burden of proving that proper notice was sent to the insured before termination of coverage" when sole issue was whether "[insurer] sent notice to [insureds] that the insurance policy was about to lapse").

[harmless] cases seems small."[31] We have reversed jury verdicts after finding the trial court misallocated the burden of proof in similar cases. We observed in *Aero International* that the "allocation of the burden of proof is crucial—oftentimes dispositive."[32] And, in *Barton's Disposal*, this Court held that an erroneous burden of proof charge necessitated reversal when that charge left the Court "with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[33]

While the misallocation of the burden of proof did not produce an "irrational verdict" here, the evidence—though largely in favor of Columbus—is not so one-sided that Conestoga failed to present a genuine issue of material fact. Given that the jury was incorrectly instructed on the law on the sole issue before it, we are left with "a substantial doubt whether the jury was fairly guided in its deliberations."[34]

## VI.

Accordingly, we affirm the district court's denial of Conestoga's motion for a judgment as a matter of law, finding that nothing in the plain language of the Policy required Columbus to "create or retain" a postmark to establish that it had mailed the Grace Notice. We affirm the district court's grant of summary judgment as to attorneys' fees. Finding that the district court erred in placing the burden of proof on Conestoga, we reverse and remand for a new trial.

---

[31] *Whiteside v. Gill*, 580 F.2d 135, 139 (5th Cir. 1978) (finding that the misallocation of the burden of proof was not harmless due to "conflicting testimony" presented to the hearing examiner). Misallocation could be harmless, for example, "[i]f all evidence favored one party and if that evidence were overwhelming, [so] we could infer that a misallocation was a technical defect that did not influence the outcome of the case." *Id.*

[32] *Aero Intern., Inc. v. U.S. Fire Ins. Co.*, 713 F.2d 1106, 1112 (5th Cir. 1983)

[33] *Barton's Disposal Serv. Inc. v. Tiger Corp.*, 886 F.2d 1430, 1437 (5th Cir. 1989)

[34] *Aero Int'l*, 713 F.2d at 1113 (citing *Mid-Texas Comm'ns Sys., Inc. v. AT&T*, 615 F.2d 1372, 1390 n.16 (5th Cir. 1980)).